Bernard Botein, J.
The interdiction against the suspension of the absolute power of alienation for more than two lives in being (Personal Property Law, § 11; Real Property Law, § 42) continues to present perplexing problems.
In 1925 Martha Herman (later Heller) established an inter vivos trust, with income therefrom payable to her for life together with a right, at her option, to invade principal to the extent necessary to yield $40,000 per year and a limited right, subject to approval by others, to obtain payment of a part of the principal at the grantor’s request. These provisions for the invasion of the principal of the trust were each limited by a restriction making them inoperative when the market value of principal of the trust was reduced to $250,000. The indenture of trust provided for a complete disposition of the corpus upon the death of the grantor to certain charitable institutions and persons specifically named therein. It also provided that the grantor should have the power “ by last will and testament * * * to alter the disposition, as herein provided, of the corpus of the trust fund after her death, and to make such other disposition thereof as she may desire.”
The grantor died leaving a last will and testament. She therein declared her desire to revoke the disposition after her death of the principal of the trust and to dispose of the same as part of her estate, the residue of which she bequeathed to trustees to pay the income to her sister for life and then to her brother-in-law for life. Upon the death of these life tenants, the will provided that the residuary trusts should terminate and that the principal should be distributed in specified amounts to named charitable institutions.
The trustees under the indenture of trust have instituted a proceeding for the settlement of their account as trustees, praying inter alia for an adjudication of the validity of the provisions in the will and of the rights of the persons named in both the indenture of trust and in the will. The determination of these issues depend directly upon an interpretation of the indenture of trust.
"Where a grantor establishes a trust for his benefit - for life, retaining only a power of appointment by will, computation of the total period of suspension of the power of alienation is properly made by including the time during which the power of alienation was suspended under the indenture together with the time of suspension under the testamentary power of appointment. (Genet v. Hunt, 113 N. Y. 158; Fargo v. Squiers, 154 N. Y. 250.) If, however, the grantor reserves to himself the power to revoke the trust during his lifetime, the perpetuity *365 period will run from the death of the grantor. (Schenectady Trust Co. v. Emmons, 261 App. Div. 154; Bankers Trust Co. v. Topping, 180 Misc. 596; Equitable Trust Co. of N. Y. v. Pratt, 117 Misc. 708.) It is clear that it is the factor of revocability exercisable during the lifetime of the grantor which permits exclusion of the grantor’s life, since the power to alienate the trust property is deemed to remain in the grantor during his lifetime by potential exercise of his self-reserved right of revocation.
It is contended, in support of the validity of the testamentary disposition of the trust corpus, that the grantor reserved the equivalent of a right of revocation by (1) the limited provisions for invasion of principal and (2) by her right to alter the disposition of the trust corpus made in the indenture and to make such other disposition as she might desire in her will.
Provisions such as are encountered herein, permitting an invasion of principal of a trust but not below a minimal amount, have been repeatedly held not to be the equivalent of a right of revocation. (Minc v. Chase Nat. Bank of City of N. Y., 263 App. Div. 141; Engel v. Guaranty Trust Co. of N. Y., 280 N. Y. 43, 47.) A right reserved in an indenture of trust to alter the disposition of its corpus and to make different disposition thereof by will is not effective during the lifetime of the grantor (Genet v. Hunt, supra, pp. 170-171), and necessarily so since a will is ambulatory and speaks as of the time of the testator’s death. (Hirsch v. Bucki, 162 App. Div. 659; Van Wert v. Benedict, 1 Bradf. 114.) Accordingly neither of these provisions in the indenture of trust possesses those ingredients which will permit a determination that the corpus of the trust was alienable during the lifetime of the grantor and that her lifetime may be excluded from the computation of the period of perpetuity. Here the settlor as the settlor in Genet v. Hunt (supra, p. 169) “could not * * * affect the limitation in remainder, except in the particular way pointed out; that is, by an appointment by will. She could not defeat it by a conveyance inter vivos.”
It must therefore be held that the indenture of trust and the residuary bequest in the will suspended the power of alienation for the life of the grantor, the life of her sister and then for the life of the grantor’s brother-in-law; a total of three lives, or one in excess of the statutory maximum. (Personal Property Law, § 11; Real Property Law, § 42.)
This conclusion raises, in turn, the problem of whether the wishes of the testatrix expressed in her last will and testament shall go entirely ignored because of an attempt to create a trust *366 for. a longer period of time than is permitted by technical and not altogether indubitable rules of law; or whether indicated judicial surgery will be performed to excise the legally invalid portion of the bequest and to preserve its valid provisions. The excision of the second life estate in the testatrix’ brother-in-law, the third measuring life, will validate the bequest to the testatrix’ sister and accelerate the vested remainders limited thereon to the named charities (Real Property Law, § 40; Moore v. Littel, 41 N. Y. 66; Kalish v. Kalish, 166 N. Y. 368; Smith v. Chesebrough, 176 N. Y. 317; Matter of Leo, 170 Misc. 491; Matter of Terwilligar, 135 Misc. 170, affd. 230 App. Div. 763; Maynard v. Maynard, 108 Misc. 362). By so doing the last wishes of the testatrix as to the disposition of her estate will be carried out to the extent of preserving the first life estate for the benefit of her sister, the primary beneficiary, as well as the bequests in remainder to ultimate beneficiaries. Her desires will be frustrated only to the extent of eliminating the intermediate life estate of her brother-in-law.
There being no objections to the trustees’ account, a final order may be settled upon notice judicially settling the account of the trustees and determining the rights of the parties to this proceeding in conformity herewith.
Settle order.
(On application for allowance of counsel fees.)
The attorneys for the accounting trustees, as well as the attorneys representing parties whose rights were affected by the construction of the trust and will involved in this proceeding, have applied for allowances of counsel fees.
There is direct statutory provision for an allowance of counsel fees to attorneys for the trustees of an express trust. (Civ. Prac. Act, § 1548, subd. 8.) There is no statutory enactment empowering the court to grant allowances to counsel appearing for parties other than the trustee in an accounting action or proceeding. Such power however, has been held to exist and to be properly exercisable to compensate attorneys who have been of assistance to the court in determining questions of construction, even though the position which they asserted was not adopted by the court. (Schenectady Trust Co. v. Emmons, 263 App. Div. 542, 543-544.) This power should, however, be exercised sparingly, for it results in a charge upon the trust estate for services which were rendered by counsel principally in the interests of their own clients and only incidentally and secondarily to further proper directions by the court for the disposition and distribution of a trust estate.
*367 The application for counsel fees of the trustees is granted, and the amount thereof will be inserted by the court in the final order. Allowances will also be made to all attorneys who filed briefs in the main proceeding in amounts which will also be fixed by the court. This determination will require that the final order previously submitted be redrawn in accordance with the foregoing and resubmitted. Counsel for the trustees are directed to resubmit such final order.