LAMKIN *v.* SAFE DEPOSIT & TRUST CO. OF BALTIMORE ET AL.

[No. 105, October Term, 1948.]

474

*Decided March 9, 1949.*

The cause was argued before MARBURY, C. J., DELA-
PLAINE, COLLINS, HENDERSON and MARKELL, JJ.

*Southey F. Miles* and *Wilson K. Barnes* for the ap-
pellant.

*Charles Markell, Jr.,* with whom was *George Ross
Veazey* on the brief, for Safe Deposit & Trust Co.

*J. Purdon Wright* and *Wm. Bruce Oswald,* with whom was *W. Frank Every* on the brief, for Rosalie E. Gill et al.

*George M. White,* with whom were *Emil Budnitz* and *White & Page* on the brief, for Simpson & Whittington.

MARBURY, C. J., delivered the opinion of the Court.

On April 3, 1909, Ernest Gill, a resident of Baltimore County, Maryland, died, leaving a last will and testament by the terms of which he left separate trust estates to each of his two sons, Ernest A. Gill and Arthur Lanning Gill, left his stock in Martin Gillett & Co. to his wife, Matilda R. Gill absolutely, and left the rest and residue of his estate to the Safe Deposit & Trust Co., in trust to pay the income to his wife, Matilda R. Gill, during her life. The will then provided that "* * * from and after the death of my said wife, I authorize or direct said Trustee to transfer and deliver the rest and residue to my estate to such person or persons as she may limit, nominate, and appoint by her last will and testament." There was a further provision that in the event of the death of Mrs. Gill without leaving a will, the trustee was to deliver the rest and residue of the estate to his children in equal shares and the descendants of any deceased child or children living at that time, such descendants to take the share the parent would have been entitled to receive if living. If there were no such children or descendants, the rest and residue went to four named remaindermen.

On May 20, 1919, Matilda R. Gill, widow of Ernest Gill, died, leaving a last will and testament. In her will she recited the authority to appoint given her in her husband's will, and then stated that in the exercise of that power of appointment or disposition, she gave all of the trust property to her trustees to be held by them as part of the rest, residue and remainder of her estate, upon the same terms and conditions as provided for the said rest, residue and remainder of her estate. She then gave the rest and residue of her estate to trustees in trust to

pay fixed annuities to her two sisters Eleanora Robb Horsey and Margaret Robb, her two brothers John Robb and Wallace Robb, and then, after the death of one brother, John Robb, her niece, Katherine Leslie Robb, daughter of John Robb, is given the sum of $400 per annum during the remainder of her life. The balance of the income is given to the son of the testatrix, Arthur Lanning Gill, for his life, and, in the event that he should die without leaving issue, the trustee is directed to pay the income in equal shares to her two sisters, Eleanora Robb Horsey and Margaret Robb, and her brother, John Robb, "or such of said three as may then survive" for their lives. The will then further provides:

"Upon the death of my sister, Eleanora Robb Horsey, and my brother, John Robb, if they survive and become entitled to receive any income under this section of my will, they shall have the right by their respective wills to dispose absolutely of such proportion of the corpus of my estate as may correspond with the proportion of the income of said estate which they are respectively receiving at the time of their respective deaths. And in the event that they, or either of them, should die without leaving a will exercising the power above given, then I direct that such portion of the corpus of my estate as they were authorized to will hereunder shall pass to my niece, Katherine Leslie Robb, and my friend Sarah B. Campbell, in equal shares. In the event that neither my sister Eleanora Robb Horsey, nor my brother, John Robb, shall survive my son, Arthur Lanning Gill, then on the death of my sister Margaret Robb, the entire corpus of my estate shall pass to my niece Katherine Leslie Robb, and my friend Sarah B. Campbell, in equal shares."

Arthur Lanning Gill, the son of Matilda R. Gill, predeceased her, dying on January 19, 1919, leaving a widow but no surviving issue. Her brother, John Robb, also predeceased her, dying on the same same day she did, May 20, 1919, but before her death. By the second clause of Mrs. Gill's will, she had given her son two tracts of land in Baltimore County, and after his death, she re-

voked this clause by codicil, and directed that this property be sold, and, from the proceeds of the sale, she provided for a number of pecuniary legacies, including one of $2000 to Sarah B. Campbell, and then provided that the balance of said proceeds should become part of her estate. At the request of the trustees, the Circuit Court of Baltimore City took jurisdiction over the estates of Ernest Gill and Matilda R. Gill, and, by a decree dated May 28, 1920, the net income of the trust funds was directed to be paid $2000 a year to Eleanora Robb Horsey, $500 a year to Margaret Robb, $500 a year to Wallace Robb, and $400 a year to Katherine Leslie Robb, these being the annuities provided in Mrs. Gill's will. The court further directed that the whole of the remaining income should be divided into two equal parts, one of which should be paid to Eleanora Robb Horsey, and the other to Margaret Robb. It was further stated in the court's decree that, on the death of any of these parties, further orders would be passed directing what should become of the income. Margaret Robb died on October 12, 1922, Wallace Robb died February 1, 1925. After their deaths, the income of the estate was distributed $400 per annum to Leslie R. Simpson, who was the Katherine Leslie Robb named in Mrs. Gill's will, and the balance to Eleanora Robb Horsey. None of the parties dispute the correctness of this division.

On May 3, 1946, Eleanora R. Horsey died leaving a will and four codicils by which she attempted to exercise the power conferred upon her by her sister, Matilda R. Gill. By her will executed June 3, 1919, she gave all of her property, including that over which she had been given power of disposition by Matilda R. Gill, to her husband, John P. Horsey. On January 27, 1920, which was the day after a decree was passed by the court approving a family agreement, Mrs. Horsey executed her first codicil, in which she recites that, in the exercise of the power of disposition conferred upon her by the will of her sister, and in confirmation of the provisions of the decree, she gives Ernest A. Gill absolutely, one-half of all

of the shares of stock in Martin Gillett & Co. which she may have the power to dispose of by will at the time of her death, or one-half of the proceeds of any reinvestment of said shares. The second codicil made by Mrs. Horsey, February 19, 1940, by Item First, directs that her debts and funeral expenses be paid out of the trust funds from the Gill estate, and especially a debt of $2000.00 due by her to John J. Nelligan. She then makes several specific pecuniary bequests, releases a debt of $2100, and gives the rest and residue of her property and estate to trustees to pay the net income to Katherine Leslie Simpson for life, and, after her death, to transfer the corpus to Norman Simpson, son of Katherine Leslie Simpson, to be his absolutely. The third and fourth codicils executed respectively July 8, 1942, and July 10, 1942, change certain specific bequests, and have no especial significance in this case. Each specifically ratifies, in other respects, the will and the former codicils.

On August 6, 1946, the Safe Deposit & Trust Co., trustee under the will of Ernest Gill, trustee under the will of Matilda R. Gill, executor of the will of Eleanora Robb Horsey, co-trustee under the will of Eleanora Robb Horsey, and Executor of the will of John J. Nelligan, asked, by their petition in the Circuit Court of Baltimore City, instruction as to the proper disposition of certain assets, held by it as trustee under the will of Matilda R. Gill. All persons having an interest were made parties, and, after appropriate proceedings, and the taking of testimony, the court filed its decree from which an appeal has been taken by Sarah B. Lamkin, formerly Sarah B. Campbell, one of the residuary legatees named in the will of Matilda R. Gill.

The disputed decisions of the chancellor which control all of the questions raised in this appeal are (1) that the creation of a life estate, with a power of appointment in Eleanora Robb Horsey, by the will of Matilda R. Gill, was a valid exercise of the power of appointment given to Matilda R. Gill by the will of Ernest Gill, (2) that Mrs. Horsey's disposition of the property was not void

in its entirety because certain of her bequests were void, and (3) that there was an intestacy as to the remainder interest in the corpus necessary to support the annuity of $400.00 a year payable to Katherine Leslie Simpson under the will of Matilda R. Gill.

A power of appointment is said to be general when there is no limitation as to its exercise (except as to the manner), nor as to the persons in whose favor it is to be exercised, nor as to the amounts to be given to such persons. *O'Hara v. O'Hara,* 185 Md. 321, 44 A. 2d 813, 163 A. L. R. 1144. Under the decisions of this court, the power must be exercised in the manner directed, that is, if the grantor says it shall be exercised by will, it cannot be exercised by deed. *Hutchinson v. Farmer,* 190 Md. 411, 58 A. 2d 638, and cases cited. The property passing under the power is the property of the donor and not of the donee, and therefore the property cannot be appointed by the donee for the payment of his debts or to his estate. *Connor v. O'Hara,* 188 Md. 527, 53 A. 2d 33, and cases there cited. If these are no other restrictions placed upon its exercise, then it is what is called a general power of appointment, under which, with the exceptions mentioned, the donee can dispose of it in the same manner as he can dispose of his own property.

The power given in this case by the will of Ernest Gill to Matilda R. Gill is in the form of an authorization to his trustee to transfer and deliver the residue of his estate "to such person or persons as she may limit, nominate and appoint by her last will and testament." It is earnestly contended by the appellant that the exercise of this power in the manner contained in the will of Mrs. Gill is an attempted delegation of the power itself, inasmuch as she gives a life estate to Mrs. Horsey, coupled with a power of appointment to be made by Mrs. Horsey in *her* will. She relies largely upon the case of *De Charette v. De Charette,* 264 Ky. 525, 94 S. W. 2d 1018, 104 A. L. R. 1455. In that case, the donor of the power devised a farm to her daughter in trust for life, with a general testamentary power of appointment. The daughter,

Mrs. Henning, by her will, appointed the estate to her daughter, Susanne, the Marquise De Charette, in trust for life, with remainder to her issue in such proportion as she might, by her will, devise. The Kentucky Court of Appeals held that the exercise of the power by Mrs. Henning was a delegation of the expression of trust and confidence personal to her and void for that reason. It held that, if this could be done, Mrs. Henning's daughter could also delegate the power to some of her issue, and this could be carried on *ad infinitum.* The case is in point, but it seems to be the only case in which such a holding is definitely made.

In the case of *Hood v. Haden,* 82 Va. 588, also cited by appellant, a wife who had a life estate and a special power of appointment under her husband's will, "At her death to leave to our children such sums or portions as the circumstances then existing may in her estimation think it best to do", left a will by which she gave one son half of the "Home Tract" for life, and after his death, if he had no issue, to such of the children or grandchildren of the testatrix as this son might appoint. The court said that "A power of appointment, where a trust and confidence is reposed in the donee, is personal to the donee and cannot be delegated. Nor will a power to appoint to children authorize an appointment to grandchildren or other persons * * *". This special appointment was held void, but the circumstances are clearly distinguishable from those in the case before us.

It is said in *Simes, Law of Future Interest,* Section 264, where that author is discussing powers of appointment generally, that "The exercise of the power cannot be delegated". Further, in the same section is the statement "It is also held that the donee of a general power may exercise his power by appointing a partial estate, and creating another power" and also "* * * the creation of the second power is explainable, *not as a delegation of the first power,* but as an appointment of the property, to shift on an event, namely, the exercise of the second power." (Emphasis supplied.) In *Restatement, Property, Future*

*Interests,* Paragraph 357, it is stated: "The donee of a general power can effectively exercise the power by creating a new power." In the case of *Mays v. Beech,* 114 Tenn. 544, 86 S. W. 713, 714, 4 Ann. Cas. 1189, where a testator left his estate to his daughter, with power to her (in the absence of children, which was the case) to dispose of it by her will. She left the income from it to her husband, and empowered him to dispose of it by his will. It was contended in that case, as here, that this was a delegation of the power given the daughter, but the court said "The power * * * is not a delegation of the power vested in the testatrix by her father's will, but the creation of a distinct and original power appurtenant to the life estate given the devisee for life, to appoint the property in question, and is valid. * * * This is a less estate than she was authorized to create by the will of her father, and is within the power therein vested in her." The Supreme Court of Tennessee cited as authority for its conclusion three English cases, *Bray v. Bree,* Clark & Finley's, House of Lords Reports, Vol. 2, p. 453, *Phipson v. Turner;* 9 Simons' English Chan. Rep. 287 and *Moses v. Martin,* 34 Beavan's Rep. 500.

The same conclusion has been reached in Pennsylvania, *McClellan's Estate,* 221 Pa. 261, 70 A. 737; *Lawrence's Estate,* 136 Pa. 354, 20 A. 511, 11 L. R. A. 85, 20 Am. St. Rep. 925; *Lewis' Estates,* 269 Pa. 379, 112 A. 454. See note on the last case in 13 A. L. R. 1055. A similar opinion was expressed in Massachusetts. *Thayer v. Rivers,* 179 Mass. 280, 60 N. E. 996; *Garfield v. State Street Trust Co.,* 320 Mass. 646, 70 N. E. 2d 705, 169 A. L. R. 719. And in New York it was stated "The decisions in our State have held that it is within the authority of the donee of a general power to give a further and secondary power of appointment to some other person." *In re Wildenburg's Estate,* 174 Misc. 503, 21 N. Y. S. 2d 331, 337, citing four earlier New York decisions.

There are no Maryland cases directly upon the question, but in at least two, a testator had conferred a general

testamentary power of appointment, and the donee had exercised it by creating an equitable life estate with an appurtenant power of appointment. These cases are *Reed v. McIlvain,* 113 Md. 140, 77 A. 329, and *Gambrill v. Gambrill,* 122 Md. 563, 89 A. 1094. The question involved in these cases was not the right to make the second appointment, but whether the exercise of that appointment violated the rule against perpetuities. The test, as this court said in the *Reed-McIlvain case,* was whether the gifts made by the will of the donee would have violated the rule if they had been written in and formed part of the will of the original donor. *Albert v. Albert,* 68 Md. 352, 372, 12 A. 11; *Thomas v. Gregg,* 76 Md. 169, 174, 24 A. 418. The court held that the appointments attempted to be made in that case did violate the rule. The same test was applied in the *Gambrill case,* and the exercise of the appointment was held to violate the rule. In neither case is there any suggestion that the donee could not exercise the first power by the granting of a second power.

The appellant correctly states that under the prior decisions of this court, including the very recent case of *Connor v. O'Hara,* 188 Md. 527, 53 A. 2d 33, the rule with respect to powers of appointment is different from that of all other jurisdictions except Kentucky and Rhode Island. The primary difference is that the property passes by testamentary power of appointment, not from the donee of the power, but from the donor. A donee cannot, therefore, unless specially authorized, appoint the estate for the payment of his own debts, and he cannot appoint it to his own estate. It is suggested by the appellant, under our construction, we should not follow the decisions we have quoted from states other than Kentucky, because, in those states, the donee has a full **property** interest in the subject matter of the power, and it is because of that interest, that the decisions have been as we have stated. We do not, however, find this argument compelling. The basis of the decisions quoted is not that the property was a part of the donees' estates,

but that the donees were exercising, even to a lesser extent than authorized, the power given them by the original donor. Therefore, the gift of a life estate, with power to appoint by the donee, was a proper disposition *of the original grantor's estate.* In the case before us, Mrs. Gill left Mrs. Horsey a life estate, with power to dispose of the remainder. This was not as much as she could have left her. It is less than an absolute estate. The power given Mrs. Gill was general, and no restriction was placed upon its exercise by her husband, except that it should be exercised by will. Mrs. Gill did not delegate this power, given her by her husband, to Mrs. Horsey. She created a new power in Mrs. Horsey which was appurtenant to the gift to the latter for life. We think that such a power was valid, and was within the intention of the original grantor.

The appellant argues that, should Mrs. Gill's appointment be valid, then Mrs. Horsey might have made a similar appointment, and her appointee might have continued in the same manner to create another power of appointment, and this might have gone on without limit, so that an easy way would be provided for a violation of the rule against perpetuities. The answer to this contention is simply that no appointee can grant a further power of appointment which may be exercised or which may create estates commencing beyond the period prescribed by the rule against perpetuities, *counting from the death of the original donor.* Whether any subsequent power violates the rule, depends on what might be the situation in these respects. Such a question, as to the estates created under a subsequent power, can be determined only when that power is exercised, which, in this case, is at the death of Mrs. Horsey. Her appointments did not violate the rule against perpetuities, and therefore we find no merit in the appellant's contention as applied to this case. If the contention were upheld that the question must be determined as of the time of the original will, it would mean that no testamentary power of appointment would ever be valid, because in

no case could it be said that some donee might not, in the exercise of the power, fix the time of the vesting of an estate which he could appoint to a time beyond the duration of lives in being and twenty-one years thereafter. In this connection, *Gray, The Rule against Perpetuities,* 4th Ed., Sec. 473, lays down three rules for the determination of the question whether a testamentary power of appointment violates the rule against perpetuities. One of these is that if the power itself can be exercised at a time beyond the limits of the rule, it is bad. A second is that a power which cannot be exercised beyond the limits of the rule is not rendered bad by the fact that within its terms an appointment might be made which would be too remote. The third rule is that the remoteness of an appointment depends on its distance from the creation, and not from the exercise, of the power. See also *Miller on Construction of Wills,* Sec. 330. Under these rules of power itself must be exercised within the period counting from the death of the original testator, but the possibility of a subsequent void appointment does not invalidate the power.

Appellant further contends that inasmuch as the power given by Mrs. Gill to Mrs. Horsey was to dispose *absolutely* of the corpus of the estate of which she was receiving the income, Mrs. Horsey did not fully exercise this limited power and because she failed to designate valid absolute estates as to all of the property, she failed to exercise the power over any of the property. As instances of her failure, it is pointed out that she attempted to designate certain of her creditors to receive parts of the estate. Mrs. Horsey, perhaps in these respects, and in others, failed in the proper exercise of the power given her, but the situation is very different from that in the case of *Myers v. Safe Deposit & Trust Co.,* relied on by appellant, 73 Md. 413, 21 A. 58. In that case the court held that where a wife had a limited power of appointment to children and grandchildren, and attempted to execute this power by creating trusts for life with remainders over which were not warranted, the court held that

the correct exercise of the power over four-ninths of the estate would have to be stricken down because the intention of the original testator was that his whole estate in its entirety should be appointed by his wife to his children and grandchildren. In the case before us, however, there is no limitation as to the donees and there is no dispositive scheme which Mrs. Horsey was obliged to carry out or which she attempted to carry out. We therefore conclude there is no authority in the court to strike down the whole disposition of the estate by her merely because several of her gifts are not valid.

The last question relates to the corpus of the estate which the trustee retains to support the annuity of $400 a year, payable to Katherine Leslie Robb, now Leslie Robb Simpson. This corpus has been fixed by agreement at $15,000, and it was held that the estates of Ernest Gill and of Matilda R. Gill should contribute to it, in certain proportions set out in the decree, as to which there is no contention. As the income from this bequest did not go to Mrs. Horsey, the remainder interest was not one of those which she was authorized to dispose of under her power of appointment from Mrs. Gill, and Mrs. Gill did not in any way specifically dispose of this remainder, either that part coming from her own estate, or that part coming from her husband's estate. The appellant shows that Mrs. Gill directed that in case her sister and her brother, John, did not exercise the power given them, the corpus of the estate which they were authorized to will should go to Mrs. Simpson and Mrs. Lamkin in equal shares, and, in the event that neither her sister nor her brother, John, should survive her son, Arthur, then on the death of her son, the entire corpus should go to Mrs. Simpson and Mrs. Lamkin. By these provisions, its is contended that Mrs. Gill intended the entire corpus of the estates (her own and her husband's) should go to Mrs. Simpson and Mrs. Lamkin. That contention, however, is not in accordance with the words of the will. What Mrs. Simpson and Mrs. Lamkin are entitled by the will to get is that part of the estate, if any,

which Mrs. Horsey had the right to dispose of and did not dispose of, and the entire corpus, only if Mrs. Horsey did not survive Arthur Gill, whom she did survive. It is apparent, therefore, that an intestacy does exist as to the corpus of the $400 bequest, and the court below correctly disposed of it by providing that the part which came from the estate of Mrs. Gill should go to her next-of-kin at the time of her death, and the part coming from the estate of Mr. Gill, should pass under the provision in his will that the rest and residue of his estate, in event of his wife's dying without a will, should go to his child or children and descendants of deceased child or children. This would mean, according to the calculation agreed upon, that Rosalie E. Gill, administratrix of Ernest A. Gill, would receive 79.651% and the next-of-kin of Matilda R. Gill living at her death, or their representatives, 20.349%. We find no error in this conclusion.

All of the other contentions of the appellant are contingent upon the approval of those or some of those which we have discussed, and with which we have been unable to agree. No appeal has been taken by any one else from any of the other conclusions reached by the chancellor and embodied in his decree, so we are not at liberty to consider them, *Hammond v. Piper*, 185 Md. 314, 321, 44 A. 2d 756; *Syfer v. Fidelity Trust Co.*, 184 Md. 391, 397-398, 41 A. 2d 293, although we do not mean, by so saying, that we disagree with any of them. As a result, the decree will be affirmed with costs to be paid proportionately out of the estates of Ernest Gill and Matilda R. Gill, it appearing that the estate of Eleanora Robb Horsey is insolvent.

> *Decree affirmed. Costs to be paid out of the estates of Ernest Gill and Matilda R. Gill.*