FITZPATRICK ET AL. *v.* MERCANTILE-SAFE DEPOSIT & TRUST COMPANY, TRUSTEE ETC.

[No. 11, September Term, 1959.]

536

*Decided November 16, 1959.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*L. Franklin Gerber, Jr.,* with whom were *Charles E. Orth, Jr.,* and *Orth, Orth & Gerber* on the brief, for the appellants.

*Albert F. Wheltle* and *Eugene A. Alexander, III,* for the appellee.

PRESCOTT, J., delivered the opinion of the Court.

This appeal is the natural sequel to *Hawkins v. Ghent,* 154 Md. 261, 140 A. 212, wherein it was held that the primary life estates created under the will of Amanda M. Hawkins

were not violative of the rule against perpetuities (Rule) and, therefore, valid; but the question of the validity of the subsequent limitations—all being contingent—was left open.

In 1876, John W. Hawkins and Amanda Hawkins, his wife, conveyed certain real and personal property to Augustine James Dalrymple in trust for Amanda Hawkins, one of the grantors, during her life. The deed of trust, among other things, directed that the property was to be held:

"[I]n trust for the sole and separate use of the said Amanda Hawkins during her life free from the control of her present or any future husband * * * with full power to the said Amanda to devise and bequeath the aforesaid property or any part thereof or any estate or interest therein to or for the use and benefit of such of her children and descendants and in such proportions as she may see fit and such part thereof as she may see fit to her present or any future husband for life and to devise and bequeath the whole or any part of said property as she may see fit in case she shall leave no child or descendant living at the time of her death and from and immediately after the death of the said Amanda in case she shall not have disposed of the aforesaid property under the powers above expressed and in so far as she shall not have made such disposition thereof in trust for the child or children of the said Amanda who may be living at the time of her death to take in equal shares if more than one and the issue then living if any deceased child or children of hers such issue to take the share or portion which its or their parent or parents would be entitled to if living.

\* \* \*

"And in case the said Augustine James Dalrymple or any trustee appointed in his place as herein provided for should die or make resignation in writing to said Amanda of said trust or become incapacitated to execute the same in the life time of the said Amanda full power is hereby reserved and given to

her as if she were a feme sole to appoint by deed to be duly executed and recorded another trustee in his place and stead with all the powers of the original trustee hereunder or at her option by such deed to cancel revoke rescind and annul this deed and thereupon in the latter case she shall stand seized and possessed to her own use of the property hereby conveyed or then held hereunder and the title thereto shall be as fully vested in her to all intents and for all purposes as if these presents had not been made * * *."

On July 24, 1895, Augustine James Dalrymple, trustee, died. Thereafter, upon the authority contained in the deed of trust to appoint by deed another trustee or at her option by such deed to cancel, revoke, rescind and annul the deed of trust, Amanda M. Hawkins, by deed dated August 6, 1895, appointed Alexander H. Robertson, as successor trustee under said deed of trust.

Amanda Hawkins died in 1924, leaving a will by which she devised and bequeathed all of her residuary estate "including all the property mentioned in the deed of trust" from which we have quoted, and "in pursuance of the power therein contained in respect of said property," to Alexander H. Robertson, in trust to divide the net income into four equal parts, which she directed to be paid, respectively, for life to her sons, Joseph Mowell Hawkins and John W. Hawkins, Jr., and her daughters, Sarah E. Ghent and Amanda M. Carter, subject to the payment of specific life annuities out of three of the portions to designated children of the principal beneficiaries for life. The will then provided that upon the death of each of her said children, the trust with relation to each child's portion would continue for 20 years after said child's death, at which time the trust would terminate and the corpus be distributed. There was, of course, a provision concerning the distribution of income between each child's death and the termination of the trust.

One of these four children, J. Mowell Hawkins, was *en ventre sa mere* at the time of the execution of the deed of trust

in 1876; hence, it is conceded that the secondary limitations with reference to the one-fourth part primarily limited to him for life are good. The other three were born after the execution of the deed of trust in 1876, but before 1895.

Mrs. Hawkins had another child by a previous marriage, Emma P. Fusselbaugh, who was born prior to 1876 and predeceased her mother, leaving descendants surviving her, some of whom are still living.

The Court, on the former appeal, decided that the primary life estates were valid whether the execution of the power, with respect to the application of the Rule, were referable to the date of the execution of the deed of trust or the time when Mrs. Hawkins' will took effect, and left open the question as to the date when the Rule began to operate in regard to the secondary limitations. (154 Md. at p. 266.)

John W. Hawkins, Jr., one of the sons of the testatrix died in 1951, bringing to an end the uncertainties that rendered the secondary limitations contingent, insofar as one-fourth of the estate was concerned. Thereafter the appellee, as the present trustee under the will of Mrs. Hawkins, instituted this suit for the construction of the deed of trust and will. Since then, two of the other life beneficiaries, Mrs. Carter and Mrs. Ghent, have also departed this life.

The matter was referred to the Master of the Equity Courts of the Supreme Bench of Baltimore, and both he and the Chancellor below concluded that the secondary limitations were valid, one determining that the Rule was properly referable to the death of Mrs. Hawkins; the other to the time of the expiration of the power in Mrs. Hawkins to revoke the deed of trust in 1895, following the death of the original trustee.

In considering the rule against perpetuities and determining its application to given facts, what it is and certain generally recognized rules and principles relating thereto must be borne in mind; and the same applies to a proper consideration of powers.

It has frequently been said that no full, complete and comprehensive definition has ever been given of the Rule. Many courts and text-writers, however, have adopted the statement

of Professor Gray that "[n]o interest is good unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest." [1]  It sets out practically the same requirements that were enumerated in the previous appeal in this case, with the exception that the Court there stated that the period of time for an interest to vest was "twenty-one years and ten months." [2]  It is a rule of law, not one of construction,[3] and it applies to legal and equitable estates [4] of both realty and personalty.  It is not a rule that invalidates interests which last too long, but interests which vest too remotely; in other words, the Rule is not concerned with the duration of estates, but the time of their vesting.[5]

Powers of appointment are generally classified as to the manner or mode of their exercise and the authority conferred upon the donee of the power.  They may be directed by the donor to be exercised by the last will and testament of the donee (testamentary) or by his deed (presently exercisable, if no postponement of the exercise is directed) or both (also presently exercisable if no postponement is directed).  A power of appointment is said to be general when there is no limitation as to its exercise (except as to the manner), nor as to the persons in whose favor it is to be exercised, nor as to the amounts to be given to such persons.  *Lamkin v. Safe Deposit & Trust Co.*, 192 Md. 472, 479, 64 A. 2d 704.  Maryland has not followed the majority rule, in all respects, when dealing with general testamentary powers.[6]  In the instant

---

1. Gray, the Rule Against Perpetuities (4th Ed.) Sec. 201.

2. Hawkins v. Ghent, 154 Md. 264, 265. See also Ryan v. Ward, 192 Md. 342, 348, 64 A. 2d 258, where "plus the usual period of gestation" is substituted for "ten months." For the only Maryland statute concerning the same, see Code (1957) Art. 93, Sec. 347.

3. Graham v. Whitridge, 99 Md. 248, 275, 57 A. 609; 58 A. 36.

4. Hawkins v. Ghent, *supra*, p. 265; Gray, *op cit.*, Sec. 202.

5. Hawkins v. Ghent, *supra*, p. 265. This has not always been the Maryland ruling on the subject. Jones, The Rule Against Perpetuities as Applied to Powers of Appointment in Maryand, 18 Md. L. Rev. 93. Professor Gray thinks there has been "great confusion" in some of the Maryland decisions. Gray, *op. cit.*, Secs. 278.4, 245.2.

6. 41 Am. Jur., Powers, Sec. 22; Jones, The Rule Against Per-

case, however, we are not dealing with general *testamentary* powers, but refer to *general* powers because of certain analogies to be made later concerning general powers exercisable by deed. If the donee of a power be limited in making the appointments to a relatively small group of persons, not including the donee, the power is clearly special.[7]

The appellants contend that Mrs. Hawkins' reserved power to revoke the deed of trust was exercisable only upon the possible happening of uncertain events, and, therefore, did not render the estate "destructible" as that term is used in relation to the application of the Rule; and viewing the secondary limitations *prospectively* from the date of the deed of trust, in accordance with the general rule, they are invalid because they would have vested too remotely so as to violate the Rule. The appellees, on the other hand, claim that the *terminus a quo* from which the time is to be reckoned under the Rule is the date of the death of Mrs. Hawkins in 1924, but, at the earliest, it should be determined as of August 6, 1895, when Mrs. Hawkins' power to revoke expired; because from the 24th of July until August 6 of that year she had had the absolute and unconditional power and authority to destroy the estate.

Mrs. Hawkins concededly did not exceed the power to appoint contained in the deed of trust with reference to the persons to whom she could make the secondary limitations, nor to the interests created in those persons, unless the Rule prevents the limitations from being effective and valid. All parties agree that if the referable date of the Rule is that of the deed of trust in 1876, all of the secondary estates involved herein are invalid; because they would not necessarily have

---

petuities as Applied to Powers of Appointment in Maryland, 18 Md. L. Rev. 93, 94, 95. Cf. Wyeth v. Safe Dep. & Trust Co., 176 Md. 369, 375, 376, 4 A. 2d 753; Rights of Creditors under a Testamentary General Power of Appointment, 4 Md. L. Rev. 297.

7. Jones, *op. cit.,* p. 94; American Law of Property, Sec. 23.12b; Professor Jones, at page 94 correctly calls attention to the fact that some powers are not clearly general or special. See also Gold, The Classification of Some Powers of Appointment, 40 Mich. L. Rev. 337.

vested [and, in fact, did not vest] within a life or lives in being and twenty-one years plus the usual period of gestation, thereafter. On the other hand, they also agree that if the referable date is either 1895, when Mrs. Hawkins' authority to revoke the deed of trust expired, or 1924, when her will became effective, all of the secondary limitations are good, as they would then have had to become vested within the time prescribed by the Rule. Our question, therefore, is: What is the crucial date when the Rule began to operate upon the secondary interests created by the will of Mrs. Hawkins?

Before considering the principal question involved we shall state two subsidiary principles that enter into a proper determination of the instant case. Of course, it is well recognized that if a *power* can be exercised at a time beyond the limits of the rule, it is bad; because each and every interest appointed under it is on a contingency which may happen at such a time that the estate appointed will be too remote. Gray, *op. cit.* (4th Ed.) Secs. 473, 474.1. Cf. *Lamkin v. Safe Deposit & Tr. Co., supra,* 192 Md. 484. There can be little doubt however that if the donee of a power is an ascertained, living person, as is the case here, the power is valid; because it will be exercisable, if at all, within the lifetime of the donee. Gray, *op. cit.* (4th Ed.), Sec. 476; 2 Simes, *Law of Future Interests,* Sec. 535; Restatement, *Property,* Sec. 390, *Comment* c. And it is well settled that a power of appointment which cannot be exercised beyond the limits of the Rule is not rendered bad by the fact that within its terms an appointment might be made which would be too remote. *Lamkin v. Safe Deposit & Tr. Co., supra,* 192 Md. at p. 484; Simes and Smith, *The Law of Future Interests,* Sec. 1274.

We turn now to the principal question here involved. We think that under the deed of trust Mrs. Hawkins reserved, *inter alia,* a contingent power to revoke the deed of trust— contingent because it was subject to a condition precedent that the trustee die or resign, etc.—and a special testamentary power to dispose of the trust fund.

We have stated above that on July 24, 1895, Mr. Dalrymple did die and when he did, Mrs. Hawkins had the power and authority "as if she were a *feme sole*" to appoint another

trustee, or "to cancel revoke rescind and annul" the deed of trust, and thereupon she would "stand seized and possessed" of the property conveyed and the title thereto would be "as fully vested in her" as if the deed had not been made. Mrs. Hawkins did not revoke the deed of trust, but on August 6, 1895, she executed a deed wherein she named a successor trustee to Mr. Dalrymple. Thus, it is seen that for this period of about thirteen days in 1895, Mrs. Hawkins, we think, in fact and in reality, had the right to cancel and revoke the deed of trust, and by doing so to become the sole owner of the trust property. In other words, she, as an individual and without the concurrence of anyone, had the absolute right to destroy the entire trust including any and all of the future interests contained therein, and to take over the full and unconditioned ownership of the property.

It may be noted that we are not, as this point, considering a power to create and limit future estates (a subject, as we pointed out above, upon which Maryland has not, in all respects, been in entire accord with her sister states). What we are considering at this time is Mrs. Hawkins' reserved power to cancel and revoke the deed of trust, and the fact that had she done so, she would have destroyed all of the future limitations; and in what manner, if any, these factors affected the critical date for the beginning of the Rule in this case.

We must determine the effect that "destructibility" has upon the starting time to be used in calculating the remoteness of estates under the Rule. The general rule is that the remoteness of an appointment depends upon its distance from the creation and not from the exercise of the power. *Ryan v. Ward, supra,* 192 Md. at page 348; Gray, *op. cit.,* p. 498. *Lewis on Perpetuities,* Chapter 12, in defining a perpetuity includes a provision that the future limitation which would not necessarily vest within the prescribed period (and consequently would be too remote in the ordinary operation of the Rule) should not be "destructible by the person for the time being entitled to the property subject to the future limitation except with the concurrence of the individual interested under that limitation." This definition was quoted by Chief Judge McSherry in *Graham v. Whitridge, supra,* 99 Md. at p. 274,

and in his opinion (p. 275) he stated "and where property is rendered inalienable *or* its vesting is deferred for a longer period [that prescribed by the Rule] the law denounces the devise, the bequest or the grant as a perpetuity and declares it void." (Emphasis supplied.) Professor Gray, *op. cit.* (4th Ed.), Section 203, says "a future interest, if destructible at the mere pleasure of the present owner of the property, is not regarded as an interest at all, and the Rule does not concern itself with it." In Section 524.1, which is headed "Revocable Trusts," he repeats the statement in slightly different language, saying, "[i]f the owner of the present interest in property is at liberty to destroy a future interest, that interest is not within the scope of the Rule against Perpetuities." He then gives as an illustration a limitation after an estate tail which must vest, if at all, at or before the termination of the estate tail as not being obnoxious to the Rule; because the tenant in tail can at any time destroy such future limitation by barring the entail. He also states in this Section that the prevailing doctrine [not necessarily the one followed in Maryland],[8] the remoteness of limitations under a general power to appoint by deed is to be reckoned from the exercise of the power and not from its creation, furnishes a strong argument, by way of analogy, for what he has said with reference to revocability.

There are many other authorities that deal with the question of "destructibility," but we will not here go into them further, for this Court dealt with the subject in a fairly recent case. In *Ryan v. Ward, supra,* 192 Md, 342, Chief Judge Marbury for the Court, considered the effect of revocability

---

**8.** It is not necessary in this case to decide whether a limitation made by the donee of a general power, exercisable by deed or will is to be reckoned from the creation of the power or its exercise. Cf. Jones, *op. cit.,* 18 Md. L. Rev. pp. 108, 109; also Ortman v. Dugan, 130 Md. 121, 100 A. 82, where the remoteness of a limitation in default of the exercise of a general power to appoint by deed or will was calculated from the creation of the power. Professor Gray, *op. cit.* (4th Ed.), p. 512, n. 6, says the point that the power was to appoint by deed as well as by will was apparently not considered.

in a deed upon the starting date of the Rule as it applied to interests created under the power contained in the deed. Beginning at page 348, he reviews many of the authorities and gives their reasons for the conclusions reached. He then stated:

> "These cases and statements from recognized authorities amply sustain the proposition that, where a settlor has power during his lifetime to revoke or destroy the trust estate, the question whether interests, or any of them, created by a deed of trust are void because in violation of the rule against perpetuities, is to be determined as of the date of the settlor's death, [in the instant case it would be the time at which Mrs. Hawkins' power to revoke the deed of trust and thereby destroy the future estates terminated] and not as of the date when the deed of trust takes effect. It will be observed, however, that the cases cited involve situations where the trust is revocable at will, or could be destroyed by a single act of the settlor such as a change of beneficiary in an insurance policy, or a sale of the trust property and the use of the proceeds. It is stated in the article in *51 Harvard Law Review,* already referred to, at p. 663:
>
> " 'The situation is analogous to future interests after an estate tail, where the period of perpetuities is computed from the date of expiration of the estate tail; the power to disentail makes the tenant in tail the substantial owner and causes interests after the estate tail to be in substance gifts by the last tenant in tail at the time of expiration of his estate. The situation is also analogous to gifts in default of the exercise of a general power by deed or will, the period of perpetuities being computed from the expiration of the power—*i.e.,* the death of the donee.' "

While it was determined in the above case that the estate there involved was not "destructible" in the sense that that word is used in connection with the Rule, there was, in the

above quoted part of the opinion, a clear-cut recognition by this Court that where the settlor of an estate has the power during his life to destroy the trust estate, the Rule does not begin to operate with reference to future estates created under the deed until such time as the future estates become indestructible. And this is supported by practically all of the authorities. See Foulke, *Powers and the Rule Against Perpetuities,* 16 Col. L. Rev. 537, 541; Gray, *op. cit.,* 524.1; Restatement, *Property,* Sec. 373; 2 Simes, *op. cit.,* Sec. 537; Leach, *Perpetuities in a Nutshell,* 51 Harv. L. Rev. 638. Cf. Fratcher, *Perpetuities and Other Restraints,* 376; Simes, *Law of Future Interests,* Sec. 516; Jones, *op. cit.,* 18 Md. L. Rev. pp. 108, 109. Simes and Smith, *op. cit.,* in Sec. 1250 state the principle very clearly when they say:

> "So long as one person has an unrestricted present power to alienate absolutely and in fee simple for his own benefit no future interest can be void under the rule against perpetuities. For the policy of the rule to prevent the restriction of practical alienability is not violated. It follows that, when such power exists, the period of the rule against perpetuities is counted, not from the inception of the instrument creating the future interest in question, but from the termination of such power."

The reasons for the statements quoted from the *Ryan* case, *supra,* and Simes and Smith seem quite apparent. The Rule was established by the courts to preserve the freedom of alienation, and to prevent restrictions on the circulation of property, *i.e.,* that property would not be *extra commercium* for too long a duration of time. *Safe Deposit & Tr. Co. v. Sheehan,* 169 Md. 93, 179 A. 536; *Ryan v. Ward, supra.* Cf. Jones, *op. cit.,* 18 Md. L. Rev. 108. If the settlor of property has a right to revoke the deed and thereby become the owner of the property, he may, after revocation, immediately alienate to any person to whom he desires; therefore, in such a case, there is no restraint upon the alienation of the property within the policy of the Rule. Simes and Smith, *op. cit.,* Sec. 1250. And if a person has the present unconditioned right

to acquire the present absolute interest in property, he is regarded by the Rule as already having such interest. Gray, *op. cit.*, Sec. 526.2; Leach, *Perpetuities in a Nutshell*, 51 Harv. L. Rev. 638; *Ryan v. Ward, supra,* 192 Md. at page 352. Lord St. Leonards expounds the same principle with reference to a general power presently exercisable by saying that for the purposes of the Rule, such a power is equivalent to a fee simple. He states the proposition as follows: "To take a distinction between a general power [presently exercisable] and a limitation in fee, is to grasp at a shadow whilst the substance escapes. By the creation of the power no perpetuity, not even a tendency to a perpetuity, is effected. The donee may sell the estate the next moment." Sugden, *Powers* (8th Ed.), 396.

It is suggested, however, that the general rule with reference to revocability should not apply in the case at bar, because Mrs. Hawkins' authority to revoke, at the time of its creation, was contingent. We have been referred to no case, and have found none, that deals with a situation exactly as we find it here. But the text-writers, who deal with the subject, either directly or by analogy to general powers presently exercisable, seem to be in accord that if a power to revoke an instrument and thereby become the sole and unconditional owner of the property involved under the instrument is such that the power to revoke must be exercised, if at all, within the period of the Rule, then the power to revoke itself is not too remote under the Rule; and future limitations appointed by the donee of the power to revoke are treated as though they are received from the donee and the Rule is calculated in regard to them from the date of the termination of the power to revoke. We think the proposition is in accord with the policy as well as the terms of the Rule. One of the purposes of the Rule being to prevent property from being out of commerce too long, it will be noted that, had Mrs. Hawkins retained a general power presently exercisable over the property involved instead of a contingent power of revocation at the time of its creation, the Rule, applying the prevailing doctrine, would be reckoned from the date of her death in 1924

instead of the expiration of the power to revoke in 1895—some twenty-nine years later.

In dealing with this particular phase of the case, we shall repeat a few of the things that have heretofore been said. We stated above that Professor Gray says that a future interest, if destructible at the mere pleasure of the present owner of the property, is not regarded as an interest at all, and the Rule does not concern itself with it (Section 203), and if the owner of the present interest in property is at liberty to destroy a future interest [even though he does not do so] that interest is not within the scope of the Rule (Section 524.1, under the specific heading, "Revocable Trusts.") See also Simes and Smith, *op. cit.,* Sec. 1250, *supra; Ryan v. Ward, supra,* 192 Md. 352. There can be no doubt that Mrs. Hawkins, who was the owner of the then present interest in the property, had the right, authority and power to destroy all of the future interests involved, by a mere stroke of her pen, from July 24 to August 6, 1895.

As manifestations of the above principle stated by Professor Gray, 6 *American Law of Property,* Sec. 24.36, gives two illustrations as to how it relates to gifts in default of appointment where a valid power is not exercised, which by way of analogy to our present case, have considerable persuasion. It states that the donee of a general power presently exercisable has the ability to appoint to himself and thereby make himself the sole owner of the property. (And when he has this ability he is regarded by the Rule as actually being the owner. Gray, *op. cit.,* Sec. 526.2.) Thus, when he dies without exercising the power, or when he releases the power, at that moment he, in effect, makes a gift from himself to the takers in default of appointment, and the validity of such gifts should be determined as if the donee had appointed to himself, thus making himself the owner of the property, and then had made a gift to the takers in default of appointment, in other words, the Rule should be calculated from the death of the donee of the power or from the date the power is released. And, as the other illustration of the principle, the same authority states that an unlimited power of consuming principal, given to a life tenant, has the same effect.

See also 4 Restatement, *Property,* Sec. 373 c; 2 Simes, *op. cit.,* Sec. 516.

4 Restatement, *Property,* Sec. 373, deals directly with destructibility. It states that the period of time "during which an interest is destructible," pursuant to the uncontrolled volition and for the exclusive personal benefit of the person having such a power of destruction, is not included in determining whether the limitation is invalid under the Rule. In *comment d,* it qualifies and explains this statement as follows:

> "*Destructibility-Prerequisites as to completeness of power.* The destructibility prerequisite for an application of the rule stated in this Section exists only when some person possesses a complete power of disposition over the subject matter of the future interests which have been limited and can exercise this power of disposition for his own exclusive benefit. * * * Similarly it does not exist when the power of revocation is exercisable only with the concurrence of one or more persons other than the settlor, or is otherwise subject to any condition precedent. The destructibility prerequisite for an application of the rule stated in this Section can exist when the power of disposition (or of revocation) is not presently exercisable at the time of its creation, provided that the period, during which the exercise of such power is postponed, does not invalidate all interests created by the exercise of such power, and thus, in effect, invalidate the power itself (see § 390, Comment b). [In other words the power itself should not be so remote as to violate the Rule. See also Simes and Smith, *op. cit.,* Sec. 1272.]"

It then states that if A limits property to Trustee B for 10 years to accumulate the income thereof, and, at the end of the 10 years, to select some descendant of B (whom we shall designate X), and to pay the income to X for life, distributing the corpus to such person or persons and in such shares and interests as X shall designate by either deed or will (this, of course, gives X a general power presently exercisable),

and in default of the exercise of the power by X to distribute the income to the children of X for life and at the death of the survivor of such children to distribute the corpus to the descendants of A then surviving, the entire limitation is valid. The section then concludes:

> "The period of ten years, and also the life of the person selected by Trustee B to be life tenant, are both excluded in applying the rules in §§ 370 and 371 to interests created by an exercise of the power and to interests limited in default of such exercise (see Comment c). Thus it is possible, under some circumstances, to exclude not only the time *'during* which an interest is destructible' but also, the time *prior* to such time." (Emphasis added.)

Thus, it is seen that the Restatement specifically points out that it is possible, under certain circumstances, for the power to revoke or to destroy to become exercisable at some time subsequent to the time of its creation. And Section 391, by way of analogy,[9] states that an appointment (other than cases governed by Sec. 390, with which we are not here concerned) under a general power which is either presently exercisable by deed from the time of its creation, or *"becomes* presently exercisable by deed at or before the end of the maximum period" permitted by the Rule is invalid, because of the Rule, only to the extent that its limitations, viewed from the time of making the appointment, violate the Rule. (Emphasis added.) It then points out, under *comment* b, that a limitation which creates a general power certain to become exercisable, *if at all,* at or before the maximum period allowed by the Rule, "permits a very substantial postponement of the final ascertainment of those who are to become the ultimate owners of the subject matter of the disposition." See also *comment e.*[10]

---

9. The Restatement, Property, Sec. 318, Comment i, points out the rather obvious fact that when "the grantor of a deed or the settlor of a trust reserves the power to revoke, his legal relations are much the same as if he reserved a general power of appointment presently exercisable." See also Simes and Smith, *op. cit.,* Sec. 1252, p. 174.

10. It may be of interest to note here that in adopting Section

Perhaps the most typical case of a valid contingent power [11] to arise, if at all, in the future is a general power presently exercisable given to the unborn child of a living person. The power is contingent because of the condition precedent that the child must be born, something that may never occur. This was done, on occasions, in marriage settlements, where property was given to a husband and wife for their joint lives, and, on their deaths, to such one or more of their children as the parents or the survivor of them may appoint. If the surviving parent appoints to such persons as any one of their children may by deed appoint, an appointment by the child is good; because the power, if it becomes exercisable at all, must do so within a life or lives in being and twenty-one years thereafter, and, if it does become exercisable, the child would have absolute control of the property, exactly as if he had the fee, a situation which is not obnoxious to the Rule. Gray, *op. cit.* (4th Ed.), Secs. 477, 957.

Simes and Smith, *op. cit.,* Sec. 1252, says that a power to revoke is, "in substance, but a general power presently

373 of the Restatement, some of the outstanding specialists of the world on the Rule Against Perpetuities participated, as well as many of the most eminent and distinguished members of the bench and bar of this country. Included among them were George Wharton Pepper, President of The American Law Institute, Richard R. Powell of the Columbia University Law School, Reporter, A. James Casner of the Harvard University Law School, Special Reporter, Roland Gray, who had just completed and published the 4th Edition of the well known and highly regarded text, "Gray, The Rule Against Perpetuities," Messrs. Simes, Fraser, Sims and Bigelow as advisors to the Reporter, Judge Morris A. Soper of the Fourth Circuit Court of Appeals, Judge Learned Hand and Judge Augustus Hand. During the proceedings in which the adoption of the tentative draft was being considered, Mr. Halpern of New York, a jurisdiction in which the Rule is regulated by statute, moved to strike Section 373. In putting the motion, the chair repeated and called particular attention to the illustration given above. No one, except Mr. Halpern, spoke in behalf of the motion which was lost. 19 Proceedings, The American Law Institute, pp. 352, *et seq.*

11. Simes and Smith, *op. cit.* Sec. 1272, give several illustrations of possible contingent powers.

exercisable." Then, in Sections 1271 and 1272, they consider contingent powers—contingent due to the fact that the powers could not be exercised before the happening of a condition precedent. It should be remembered that we are still considering Mrs. Hawkins' power to revoke reserved in the deed of trust, which was contingent at its inception because its exercise was subject to the condition precedent that the trustee die, but became absolute on July 24, 1895, and remained so until August 6 of that year. Simes and Smith reach the conclusion, as do the other writers upon the subject, that where the power is contingent it will be void under the Rule unless the contingency is bound to occur within the maximum period allowed by the Rule; but where the power is given to a living person to be exercised upon a condition precedent, the condition would not ordinarily make it bad, since the power must be exercised, *if at all,* within the life of the named person.

After considering what has been said by these well-recognized authorities upon the subject, and without any authoritative decision directly on point, we reach what to us seems the inevitable conclusion that the condition precedent to Mrs. Hawkins' power to revoke did not render it too remote under the Rule, because, if it were to become exercisable at all, it must have done so within her lifetime; hence, from July 24 until August 6, 1895, she had the absolute and unconditional power to revoke the deed of trust and thereby destroy all of the future interests therein mentioned. And we reach the further conclusion that although her power to revoke was contingent at the time of its creation, this fact, alone, does not prevent the general rule—when one person has an unrestricted present power to alienate absolutely and in fee for his own benefit, the Rule is counted not from the inception of the instrument creating the future interest, but from the termination of such power—from applying in this case.

This leaves but one further proposition for consideration. It is, also, suggested that Mrs. Hawkins' ownership of the trust estate, had she exercised her power to revoke, would not have been absolute, as it was necessary for the spouse to join in the deed of trust in 1876 and she would not (in case of

revocation) have had the right to convey the property, absolutely, without his consent. To hold as suggested here would destroy much of the law in relation to revocability and general powers of appointments presently exercisable as applied to the Rule. No married person in Maryland may convey real property so as to destroy the other spouse's dower interest therein without the consent of the spouse; but it cannot be seriously contended that this fact, alone, would necessarily require a holding that estates which are revocable or subject to a general power of appointment presently exercisable should be referable, with regard to the Rule, to the date of the creation of the powers rather than the date of their exercise or termination.

As Mrs. Hawkins had the absolute and unconditioned power, between July 24 and August 6, 1895, to make herself the sole owner of the trust estate, we hold that the Rule in this case must be reckoned from the date of the expiration of such power, namely, August 6, 1895. Simes and Smith, *op. cit.*, Sec. 1250; Leach, *Perpetuities in a Nutshell*, 51 Harv. L. Rev. 638; Gray, *op. cit.* (4th Ed.), Secs. 203, 524.1; Foulke, *Powers and the Rule Against Perpetuities*, 16 Col. L. Rev. 537, 541; 4 Restatement, *Property*, Sec. 373; 2 Simes, *op. cit.*, Sec. 537. All *supra*. See also 6 *American Law of Property*, Sec. 24.33. Cf. *Ryan v. Ward, supra*, 192 Md. 352; Jones, *op. cit.*, 18 Md. L. Rev. pp. 108, 109. This renders the secondary limitations here involved good and valid, as they vested within the time prescribed by the Rule.

> *Decree affirmed, costs below and in this Court to be paid out of the trust estate.*

HENDERSON, J., filed the following dissenting opinion.

There are some points in the instant case upon which everyone seems to be agreed. The testamentary appointments, under established principles, are generally to be read as though they had been included in the original deed of trust, and if so read in the instant case, violate in some respects the rule against perpetuities. It is also agreed that had the settlor

retained a complete and unconditional power of revocation, the time from which the rule runs would not have been the date of the deed but the date of the settlor's death, when the power terminated. This principle was clearly recognized in *Ryan v. Ward,* 192 Md. 342, 353. See note 7 A.L.R. 2d 1089, and *Cook v. Horn,* 104 S. E. 2d 461 (Ga.). The theory is that since a general power to appoint by will or deed, or a complete power to revoke, is the substantial equivalent of absolute ownership, and does not restrain alienation, the application of the rule should be postponed. See also notes on the *Ryan* case in 47 Mich. L. Rev. 1226 (1949), 34 Minn. L. Rev. 152 (1950), and 10 U. Pitt. L. Rev. 556 (1949).

In the *Ryan* case we held that a limited power of annual withdrawals, which would have made it possible to destroy the entire estate within twenty-two years, did not render the estate "destructible". Accord: *In re Heller's Trust,* 115 N.Y.S. 2d 343. We rejected the argument that this was the equivalent of a complete and unconditional power to consume (or to revoke). The question now before us is whether the fact that the power of revocation was conditional upon the death or resignation of the trustee, Dalrymple, defers the time from which the validity of the appointments is to be determined. His death did in fact occur, but need not have occurred, in the lifetime of the settlor. She did not revoke, but appointed a new trustee. Thus her right to alienate only existed for thirteen days in 1895, and did not exist at the creation of the trust, or at her death when her will took effect.

There seems to be no authority directly in point. 4 Restatement, *Property,* § 373 (d), discusses the destructibility requisite for an application of the rule stated therein. It is there noted that the power does not exist when the power of appointment is one which "must be jointly exercised by two or more persons or which can be exercised by the donee only with the concurrence of one or more other persons. Similarly it does not exist when the power of revocation is exercisable only with the concurrence of one or more persons other than the settlor, *or is otherwise subject to any condition precedent.*" (Italics supplied.) Since the power to revoke in the instant case was exercisable only upon the death or resigna-

tion of the trustee, as a condition precedent, it seems clear to me that, up to this point at least, the Restatement does not support the court's conclusion in the instant case. Reliance is placed, however, on the next sentence which states that, in determining destructibility, the power of revocation need not always be "presently exercisable at the time of its creation, provided that the period, during which the exercise of such power is postponed, does not invalidate all interests created by the exercise of such power, and thus, in effect, invalidate the power itself. Thus if A limits property to Trustee B for the period of ten years to accumulate the income thereof, and at the end of that time to select some one of the descendants of B, and to pay the income to the person thus selected for life, distributing the corpus to such person or persons and in such shares and interests as the person thus selected shall designate by either deed or will, and in default of an exercise of such power to distribute the income to the children of the person so selected for life and at the death of the survivor of such children to distribute the corpus to the descendants of A then surviving, the entire limitation is valid. The period of ten years, and also the life of the person selected by Trustee B to be life tenant, are both excluded in applying the rules stated in §§ 370 and 371 to interests created by an exercise of the power and to interests limited in default of such exercise (see Comment c). Thus it is possible, under some circumstances, to exclude not only the time 'during which an interest is destructible' but also, the time prior to such time."

I am not persuaded that this illustration controls the instant case. There the complete power of disposition by will or deed, which is equivalent to a power of revocation, is by the terms of the instrument itself, postponed for the period of accumulation, ten years, when the donee of the power is selected. It is as though the instrument itself were to become effective only upon the happening of a condition, like a delivery in escrow. No rights are vested in any beneficiary until the selection occurs. But in the instant case the rights of the donee, and her powers of testamentary appointment came into being upon the delivery of the deed, and at that time the power to revoke was wholly conditional upon an event not

certain to happen in her lifetime. I do not read the passage last quoted as modifying the earlier statement that the power to revoke cannot be made subject to a condition precedent.

I find nothing to the contrary in § 391. This section deals with the validity of general powers of appointment, and is applicable only by way of analogy. If given the construction proposed, it seems inconsistent with § 373. Moreover, the illustration given of a power granted to a corporate trustee, conditional upon the election of a Republican president, which is said to be not "presently exercisable", seems to me to support my view. The event might have happened during the life of the settlor. While the trustee in the instant case was not corporate, the power was contingent not only on the resignation or death of the first trustee, but of each of his successors. Even the first trustee might have outlived the settlor and all of the named beneficiaries. In 2 Jarman, *Wills* (8th ed.), p. 796, it is said: "A power limited to arise upon a future or contingent event must be distinguished from a power which takes effect upon a future event, but is presently exercisable. The former, not being exercisable before the event, upon which it is limited to arise, happens, is, it seems, void for remoteness, unless the event is such that it must happen within the legal period." See also *Marsden on Perpetuities*, § 238.

The fact that the power was conditional requires a consideration of events occurring years after the delivery of the deed of trust, and after it came into full operation, in order to determine whether or not it was "presently exercisable". I take it that if the trustee had in fact survived the settlor, it would not be now contended that the settlor ever possessed the complete, or any, power of revocation equivalent to ownership. The appellee's whole case rests on the fact that for a period of thirteen days the power to revoke was exercisable.[1] Consideration of what subsequently transpires violates the established principle that the validity of trusts with-

---

1. (For present purposes I assume that, had she revoked, she would have had substantial ownership, although it seems clear she could not have conveyed the property in 1895 without the joinder of her husband. See Code (1888), Art. 45, sec. 2).

in the ambit of the rule must be viewed prospectively from the time of their creation. I find no compelling reason to widen the recognized exceptions to the strict application of the rule. If we are to adopt the "wait and see" doctrine advocated by some writers it should be by legislative action and not by judicial fiat.

While perhaps not strictly in point, I think the New York cases clearly support my view. See *In re Perkins' Estate*, 157 N.E. 750 (N.Y.), and cases there cited, and *Herzog v. Title Guarantee & Trust Co.*, 69 N.E. 283, 287 (N.Y.). I think the decree in the instant case should be reversed.