DIGGS *v.* SIOMPORAS, ET AL.

[No. 69, September Term, 1967.]

*Decided February 8, 1968.*

The cause was argued before HAMMOND, C. J., and HOR-
NEY, MARBURY, BARNES, FINAN and SINGLEY, JJ.

*George B. Woelfel, Sr.* for the appellant.

Submitted on brief by *Douglas F. Lyons* for the appellees.

HORNEY, J., delivered the opinion of the Court.

The somewhat unusual question presented by this appeal is whether the prospective purchasers of a lot of land under an option may waive a defect in the title and compel conveyance of the land subject to the flaw on the refusal of the record title-holder to execute a deed. The Circuit Court for Anne Arundel County decreed specific performance and the purported seller appealed. The optionor-appellant is Charles Diggs and the optionees-appellees are Thomas J. Siomporas and Burton Hazel.

The optionees, who were interested in either of two lots in a development known as "Woodland," engaged a real estate agent to purchase one of them. One lot was owned by Frances Sparrow and the other was owned by Charles Diggs. The agent went to see both owners. Frances Sparrow was not interested in selling, but Charles Diggs was and asked $3000 for his lot. He also agreed to sign an option upon the making of a down payment to close the deal. When this information was relayed to the optionees, one of them (Thomas Siomporas) gave the agent a check for $100 payable to the optionor. The agent thereupon prepared the option in question which, in addition to the initial payment of $100, provided for payment of the balance of $2900 in sixty days. The option also contained a provision that "if title is not good and merchantable and free of encumbrances, this contract shall become void and neither party shall have any claims against the other." When the option and check were taken to the optionor, who could not read or write, the agent having first read and explained the transaction to him, the optionor executed the option by making an x-mark and Margaret Coates signing his name for him. The execution of the option was witnessed by the real estate agent.

The description of the optioned lot was taken from a deed dated May 22, 1930 from W. Meade Holladay, widower, to Charles Diggs, which purported to convey 2.5 acres of land known as Lot 9 on the plat of "Woodland" recorded in the

county land records. A subsequent title examination, however, disclosed a defect in the title in that Lot 9 had been conveyed to Douglass and Pearl Duvall by a deed dated July 20, 1929 and recorded before the deed to Charles Diggs. As a consequence title to Lot 9 had not passed to the optionor. But, as the record on the whole indicates, the parties had Lot 10 in mind as that which was meant to have been conveyed by W. Meade Holladay to Charles Diggs.

When the defect was discovered, the optionees decided to accept whatever interest the optionor could convey in Lot 10 and take a chance of perfecting the title thereto by securing a confirmatory deed from the heirs of W. Meade Holladay who had died. On the last day of the option period, the optionees, accompanied by the real estate agent, went to the optionor, declared they were ready to buy the lot and tendered $2900 in cash to the optionor. He refused the tender, saying that he was not going to do business with them. On the same day, the agent, on the insistence of the optionor, took back the $100 check "in an attempt to relieve [himself] of any responsibility" and returned it to the drawer for safekeeping so that he, the agent, would not lose it. In his answer to the amended bill of complaint, the optionor averred that he had returned the check "with the understanding that the transaction was closed and that he did not want the money without doing something for it" and denied that the optionees "offered to pay him the option in full when he did not have title to the property and that it was not until after the sixty day option had expired and the money refunded that he told them he would not go through with any further dealings." At the hearing, the optionor, besides testifying that he insisted that the agent take the check back " 'cause I haven't done nothing for it," further stated that he gave the check back on the same day it was given to him; that the optionees were never ready and willing to perform; and that they never tendered $2900 to him. He also denied having executed the option.

Subsequently, the optionees got in touch with the heirs of the original grantor and, having convinced them of the mistake made by the predecessor in title, procured a deed to Lot 10 in the name of the optionor. The deed, dated some five months

after the expiration of the option was sufficient to give the optionor good title to the lot. After the confirmatory deed had been obtained, the optionees attempted to induce the optionor to execute a deed conveying the lot to them but were not successful. Thereupon, this suit for specific performance was brought.

The chancellors (Childs and Melvin, JJ.), noting the variance between the answer of the optionor to the bill of complaint and his testimony at the hearing, found that the optionees were ready, willing and able to complete the transaction and that the optionor was not released from his obligation when the optionees waived the defect in the title. They concluded that performance of the option "was prevented solely through the action of the defendant."

On appeal, the optionor contends variously that the contract was an option; that under his version of the facts the optionees were never willing to perform; that on the return of the $100 check and expiration of the option period, the option ceased to exist; that there was no consideration for an extension of time; that the provision in the option with respect to unmarketability vitiated the contract because he had no title to convey during the option period; and that since this suit was not brought until more than a year after the confirmatory deed was procured, the optionees were guilty of laches.

The optionees conceded that the contract was an option but contended that they had performed thereunder when they waived the defect in title and tendered the optionor the balance of the purchase price within the option period.

The lower court, having seen and heard the witnesses, chose to believe the testimony presented by the optionees. We will not disturb that finding. Maryland Rule 886 a. Accepting the testimony of the optionees as true, we agree with the chancellors that the optionees attempted to exercise the option within the specified time by tendering the purchase price but were prevented from so doing by the deliberate acts of the optionor. For these reasons, the authorities cited by the appellant-optionor—for the proposition that when an option has by its terms expired it cannot thereafter be accepted and no extension of time absent a valuable consideration can extend it—are not in point.

An option is a continuing offer to sell during the duration thereof which on being exercised by the optionee becomes a binding and enforceable contract. 1A *Corbin on Contracts* § 264; 1 *Williston on Contracts* § 25; 17 Am.Jur.2d *Contracts* § 32; 77 C.J.S. *Sales* § 33. And when the optionee indicates an intention to exercise the option and tenders the amount of the purchase price, he has performed under the option and is entitled to specific performance. *Messina v. Moeller,* 214 Md. 110, 133 A. 2d 75 (1957); *Blondell v. Turover,* 195 Md. 251, 72 A. 2d 697 (1950); *Trotter v. Lewis,* 185 Md. 528, 45 A. 2d 329 (1946). The fact that the $100 check was returned had no effect. The optionees tendered the balance of the purchase price and the check was given to the real estate agent, solely on the insistence of the optionor, after he had refused to receive $2900 in cash. The check was then returned to the drawer because the agent did not want the responsibility of its safekeeping.

Options to purchase commonly contain a clause providing that if the title is not marketable, the optionee is entitled to a return of the deposit. The provision is for the protection of the prospective purchaser. A purchaser, therefore, may waive a defect in title and take whatever interest the seller has with restitution or abatement of the purchase price under such circumstances as the court may determine. 81 C.J.S. *Specific Performance* § 21 b (2) (a); 49 Am. Jur. *Specific Performance* §§ 105, 106; 5A *Corbin on Contracts* § 1160; 5 *Williston on Contracts* § 1436. Cf. *Westpark, Inc. v. Seaton Land Co.,* 225 Md. 433, 455, 171 A. 2d 736, 746 (1961). The optionees in the present case, apparently because their procurement of a confirmatory deed for the optionor had perfected his title, did not seek an abatement. By the same token, the procurement of the confirmatory deed makes it unnecessary for us to consider the effect of the clause voiding the option in the event the title was unmarketable.[1] A question as to laches was not raised below

1. Even if a confirmatory deed had not been procured it is clear that the optionor could not set up his defective title as a defense to the suit of the optionees for specific performance. See Medoff v. Vandersaal, 116 Atl. 525 (Pa. 1921), where the word "void" in an unmarketability clause was interpreted to mean "voidable" with the right of choice in the party beneficially interested.

682

but had it been, laches would have been inapplicable because the failure of the optionees to reasonably comply with the terms of the option was due to the intransigence of the optionor.

*Decree affirmed; appellant to pay the costs.*