861 A.2d 710

**Helen E. SELIG, Executrix of the Estate of Milton E. Selig**

v.

**STATE HIGHWAY ADMINISTRATION, et al.**

**No. 23, Sept. Term, 2004.**

Court of Appeals of Maryland.

Nov. 16, 2004.

656

Saul M. Schwartzbach, Bethesda, for appellant.

Kevin Reynolds, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for appellees.

Brian J. Markovitz (Timothy F. Maloney, Joseph, Greenwald & Laake, P.A., on brief), Greenbelt, for appellees.

**658**

Argued Before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

CATHELL, Judge.

This case raises issues concerning the alleged creation of a statutory exception to the Rule Against Perpetuities and the possibility of retroactive application of a later enacted statute to a pre-existing land sale contract and deed.

On March 28, 2003, petitioner Helene [1] Selig, as executrix of the estate of her deceased husband, Milton E. Selig, filed in the Circuit Court for Prince George's County a three-count complaint for declaratory judgment, specific performance and breach of contract damages against the respondent, State Highway Administration ("SHA"). Petitioner sought to enforce a right of first refusal clause contained in a July 6, 1978, contract [2] and in an October 20, 1978, deed between Milton E.

---

1. This case was incorrectly captioned to indicate petitioner's name as "Helen E. Selig." Petitioner's first name, as shown by her signature, is Helene. Given the property title nature of this case, the accuracy of her name is of particular importance. It is also noted that the captioning of each party's brief, including the petitioner's reply brief, showed a different variation of petitioner's name.

2. The original contract was an option contract whereby the SHA had the option to purchase the property, contingent on the SHA agreeing that the seller would, if the option was exercised, have a right of first refusal to repurchase the property. Hereafter, when we refer to the "contract" we are, unless the context indicates otherwise, referring to the right of first refusal agreement in the option contract and in the deed.

We have stated in *Diggs v. Siomporas*, 248 Md. 677, 237 A.2d 725(1968):

"An option is a continuing offer to sell during the duration thereof which on being exercised by the optionee becomes a binding and enforceable contract. And when the optionee indicates an intention to exercise the option and tenders the amount of the purchase price, he has performed under the option and is entitled to specific performance."

*Id.* at 681, 237 A.2d at 727 (internal citations omitted); *see also Beall v. Beall*, 291 Md. 224, 227, 434 A.2d 1015, 1018 (1981) (stating that "[a]n option is a continuing offer to sell by the optionor which cannot be withdrawn by him during the stated period") (alteration added). An "option" and a "right of first refusal" are distinctly different creatures in certain respects.

Selig and the SHA wherein Mr. Selig conveyed to the SHA a 4.7135 acre parcel of land. The clause at issue provided that Mr. Selig or his successor in interest had the right to reacquire from the SHA the property conveyed if the SHA abandoned the project for which it had acquired the property and the Maryland Secretary of Transportation determined that the property was no longer needed for any transportation purpose. The SHA refused to honor the right of first refusal and the residual property at issue was offered for sale by the SHA at public auction and was purchased by the intervenors for one million eight hundred thousand dollars ($1,800,000).

On May 2, 2003, respondent filed a motion to dismiss the complaint. On May 7, 2003, respondents H. Daniel Jobe II and Floyd Sheahan, owners of Capitol Buick, Pontiac, GMC, Inc., ("Capitol"), the successful bidder at the SHA auction, filed a motion in the circuit court to intervene as party defendants; and on June 11, 2003, a subsequent motion sought to add Capitol Buick, Pontiac, GMC, Inc. (also "Capitol") as an additional defendant intervenor. Despite petitioner's opposition, the circuit court granted Capitol's motions to intervene on June 27, 2003. The parties did not engage in discovery before disposition of the case in the trial court.

Following a hearing on August 26, 2003, in respect to respondent's motion to dismiss, which respondent intervenors had joined, the circuit court issued a twelve-page opinion on November 3, 2003, dismissing petitioner's complaint. Petitioner then filed a Notice of Appeal to the Court of Special Appeals on November 26, 2003. On May 14, 2004, the Court of Appeals, on its own initiative and before the intermediate court could decide the appeal, ordered the issuance of a writ of certiorari in the instant case. *Selig v. State Highway Administration*, 381 Md. 324, 849 A.2d 473 (2004). We address the following questions:

---

In the present case if the right of first refusal is valid it sprang into existence when the SHA exercised the option contract.

"1. Did the reacquisition provisions of the contract and deed executed by the State Highway Administration violate the Rule against Perpetuities?

"2. Did the State Highway Administration's use of a portion of the conveyed property for transportation purposes nullify petitioner's right of reacquisition?"

We hold that Md.Code (1977, 1977 Supp.), § 8–309 of the Transportation Article created a statutory exception to the common-law Rule against Perpetuities. The language contained in the version of § 8–309 in effect at the time of the execution of the option contract, which also contained the right of first refusal, and of the deed between Mr. Selig and the SHA, which relevant language was for all intents and purposes incorporated into the contract and deed, governs the disposition of the property at issue. Petitioner is entitled to reacquire the remainder of the property according to the statutory language and the contract with the SHA. Subsequent changes to § 8–309 do not apply retroactively to the contract and the deed in the case *sub judice.*

## I. Facts

On July 6, 1978, Milton E. Selig, the deceased [3] husband of petitioner Helene Selig, executed an option contract with the SHA to convey in fee simple, if the option were exercised, a 4.7135 acre parcel of land located in Prince George's County in exchange for a purchase price of seven hundred thousand dollars ($700,000.00). The option was exercised and the deed conveying this property to the SHA was executed on October 20, 1978, and recorded among the land records of Prince George's County in due course.

The deed contained an eleven paragraph description of the property and stated, *inter alia,* that "[t]he property conveyed in fee simple by this instrument is 4.7135 Acres, more [or] less." Further contained within both the contract and the deed was a clause inserted by the parties stating the following:

---

**3.** Mr. Selig died on March 16, 1984.

"IT IS HEREBY UNDERSTOOD AND AGREED BE-TWEEN THE PARTIES HERETO THAT if the highway project for which the subject property is being acquired is abandoned and the Maryland Secretary of Transportation determines that the property is no longer needed for any transportation purpose, the Grantor herein or his successor in interest will have the first right to reacquire the property on payment of an amount equal to the consideration that the Administration has paid to the Grantor herein."

This language tracks the wording of Md.Code (1977, 1977 Supp.), § 8–309(b) of the Transportation Article, the statute in effect at the time of the conveyance, which governed the "Sale of land not needed for public purposes." That statute read:

"(b) *General requirement for disposition of land.*—(1) Notwithstanding any other statute to the contrary, if land acquired under this subtitle is not needed for present or future highway or other public purposes, the Administration shall dispose of the land as soon as practicable after the completion or abandonment of the project for which the land was acquired.

(2) If the land is from a project that was abandoned, and the Secretary determines that the property is no longer needed for any transportation purpose, the person from whom the land was acquired or the successor in interest of that person has the first right to reacquire the land, on payment of an amount equal to the consideration that the Administration or Commission originally paid for the land. If this right is not exercised, the land shall be disposed of under this section in the same manner as if the land were from a project that has been completed or otherwise as permitted by this section."

The SHA's stated purpose in acquiring the land was "State Highway Administration Project No. P 286–1–370," *i.e.,* a project to make improvements to the Baltimore–Washington Parkway in Prince George's County from the Washington, D.C. line to the Anne Arundel County Line. These improvements, specifically a highway ramp, to the Baltimore–Wash-

ington Parkway were never constructed. The SHA instead utilized and/or reserved a total of only 0.6395 acres of the conveyed property for the 1984 extension of the right-of-way of Maryland Route 193 (Greenbelt Road) and for future expansion of U.S. Interstate 495, *i.e.,* the Capital Beltway. Accordingly, 4.074 acres of the original conveyance remained unused and unreserved by the SHA.

In February 2003, the SHA advertised that pursuant to the provisions of "Section 8–309 of the Transportation Article of the Annotated Code of Maryland" it would conduct an auction of the 4.074 acres on February 24, 2003. Md.Code (1977, 2001 Repl.Vol.), § 8–309 provides in relevant part:

"(a) *Purpose of section.*—The purpose of this section is to return unneeded land to the tax rolls of the counties and to make this land available for use. . . .

(b) . . . the Administration shall dispose of the land as soon as practicable after the completion or abandonment of the project for which the land was acquired.

. . .

(c) *Completed project—Reacquisition of land.*—(1)(i) As to land from a completed project:

1. The Administration will notify the person from whom the land was acquired, or the successor in interest of that person, within 30 days after making a determination that the land is not needed by the Administration and that the land is available for reacquisition."

Although not personally served with notice of the impending auction, petitioner, as Mr. Selig's successor in interest, nonetheless notified the SHA by letter dated February 21, 2003, of her desire to exercise the estate's first right to reacquire the property according to the language contained within the 1978 contract and deed. She tendered a certified check for $700,000.00, representing an amount equal to the original consideration that the SHA had paid for the property as originally conveyed.

The SHA conducted its auction as scheduled and respondent intervenors submitted the high bid of $1.8 million for the property offered at auction. Respondent intervenors' purchase apparently remains unconsummated.

By letter dated March 10, 2003, SHA notified petitioner that she had no right to reacquire the remaining property for $700,000.00 and returned her check. In spite of the fact that it had already sold the property at public auction, the SHA's letter indicated that 1) there was no right of reacquisition because there had been no project abandonment, 2) the property had been acquired for a broadly-defined Baltimore–Washington Parkway improvement, a project that was not abandoned but rather "limited to right-of-way acquisition and some State road improvements near the Parkway."

The SHA concluded by asserting that the project for which the property had been acquired was not abandoned and a portion of the originally conveyed property, indeed, had been used for transportation purposes, namely, the widening of Maryland Route 193 and a reservation for future improvements to the Capital Beltway. Therefore, according to the SHA's letter, the Selig estate would have only the right to reacquire excess property from a completed project as delineated in the current (*i.e.*, 2003) version of § 8–309 of the Transportation Article. The SHA's letter made no mention of the contract's and deed's pertinent clauses having a possible conflict with the common-law Rule against Perpetuities.

Petitioner then sued the SHA contending that her right to reacquire the property arose from the contractual provision and not from the present § 8–309 of the Transportation Article. She further argued that her reacquisition right had vested because the property was not used for the purpose for which it had been acquired.

The SHA did not file an answer, but rather filed a motion to dismiss which raised for the first time the specter that the pertinent clauses found in the contract and the deed amounted to a violation of the common-law Rule against Perpetuities. The SHA observed that the absence of a date by which the

contract's and deed's right of refusal must vest violated the Rule against Perpetuities and rendered petitioner's right to reacquire the property void and unenforceable. The SHA went on to argue that the conditions precedent, *i.e.*, abandonment of the specific highway project for which the property was acquired and the Maryland Secretary of Transportation's determination that the property is no longer needed for any transportation purpose, had not both occurred, thus there was no abandonment of the project.[4]

The SHA also maintained that because petitioner's right had not vested in 1978, it was extinguished by the subsequent repeal and reenactments of § 8–309(b) of the Transportation Article, governing the disposition of land. Finally, the SHA maintained that even if the clause were preserved as being statutorily exempt from the Rule against Perpetuities, the petitioner's right of first refusal could not apply to a 4.074 acre "remnant" of the original parcel, but could apply only to the original conveyance in its entirety.

Capitol filed an answer as well as a memorandum in support of the SHA's motion to dismiss. Classifying the clause's conditions as creating the possibility of a reverter, Capitol echoed the SHA's argument that vesting of the clause's conditions was an impossibility since no project abandonment had occurred, the property already had been used for a transportation purpose and the contract's and deed's pertinent clauses could not be interpreted to limit the use of the property to construction of a highway ramp. Capitol argued that the traditional Rule against Perpetuities as followed in Maryland

---

4. The Court observes that the SHA's having offered the instant property for sale at auction provides strong evidence of abandonment of that portion of its project that it did not intend to complete. Additionally, the fact that the SHA offered the property for sale is strong evidence that the Secretary of Transportation, under whose aegis the SHA operates, had determined that the property was no longer needed for any transportation purpose. Otherwise, the SHA could condemn, or otherwise purchase, much more land than needed for a project, hold the land for a period, and then sell it when the land value has appreciated. The State Highway Administration is not normally engaged in the property speculation business.

would serve to strike the impermissible conditions from the contract and the deed and solidify Mr. Selig's conveyance to the SHA as a "fee simple absolute."

## II.   Discussion

### A.   The circuit court's opinion

In dismissing petitioner's complaint the Circuit Court for Prince George's County found no merit in petitioner's argument, declaring, "As the land was utilized, the argument of abandonment and reverter raised by Mrs. Selig in addressing whether the revised or original Md. Trans. Code Ann. § 8–309 controls is moot." Instead, the circuit court focused its opinion on the Rule against Perpetuities, stating:

"The Rule against Perpetuities voids those conditions precedent that have no time limitations. Those conditions are struck from the contract and it is as if the contract was a fee simple absolute and those conditions never existed. In this instance, the two conditions precedent violated the Rule against Perpetuities because the parties did not know and could not determine if the land would be used or abandoned within a life in being plus 21 years from the implementation of the Contract. To counteract this violation, the court would have to imply a reasonable time limit to the conditions.... [I]mplying a reasonable time limit is not possible when the conditions are outside the control of the parties. The Rule against Perpetuities has been violated." [Alterations added.]

The circuit court noted also that petitioner's request to reacquire the property in light of the fact that the reconveyance would net her only 4.0740 acres amounted to petitioner's having factually conceded that some portion of the original conveyance had been used.

### B.   The common-law Rule against
### Perpetuities in Maryland

■ We begin our discussion of the questions under examination with a review of Maryland's application of the Rule

against Perpetuities which remains firmly imbedded in Maryland's common law,[5] and generally may be overcome only by a statutory exception,[6] or by one of the very few common-law exceptions.[7]

---

5. For a more complete history of the Rule against Perpetuities, see Judge Wilner's discussion for the Court in *The Arundel Corp. v. Marie, et al.*, 383 Md. 489, 860 A.2d 886 (2004), intended to be filed just prior hereto.

6. The General Assembly has articulated several exemptions to the common-law Rule against Perpetuities and these exceptions, along with a reinforcement of the Rule's recognition, are delineated in Md.Code (1974, 2001 Repl.Vol.), § 4–409 and § 11–102 of the Estates & Trusts Article. Section 4–409 exempts from the Rule against Perpetuities a legacy for charitable uses under certain conditions. According to § 11–102 the Rule does not apply to (a) Cemetery perpetual care, (b) Transfer from charitable corporation on contingency, (c) Trust for employees, (d) Trust for charitable purposes, and (e) Power of trustees. The Rule's application is further limited by statute in Md.Code (1974, 2001 Repl. Vol.), § 11–103 which states,

"(a) In applying the rule against perpetuities to an interest limited to take effect at or after the termination of one or more life estates in, or lives of, persons in being when the period of the rule commences to run, the validity of the interest shall be determined on the basis of facts existing at the termination of one or more life estates or lives. In this section an interest which must terminate not later than the death of one or more persons is a 'life estate' even though it may terminate at an earlier date.

(b) If an interest would violate the rule against perpetuities as modified by subsection (a) because the interest is contingent upon any person attaining or failing to attain an age in excess of 21, the age contingency shall be reduced to 21 as to all persons subject to the same age contingency.

(c) This section shall apply to both legal and equitable interests."

Md.Code (1974, 2001 Repl.Vol.), § 4–409 of the Estates and Trusts Article circumscribes the Rule's application to a legacy for charitable use:

"A legacy for charitable use may not be void because of an uncertainty with respect to the donees if:

(1) The will making the legacy also contains directions for the formation of a corporation to take it; and

(2) A corporation is formed in accordance with the directions, capable and willing to receive and administer the legacy, within 12 months from the probate of the will, if the legacy is immediate and not subject to a life estate. If the legacy is subject to a life estate a corporation shall be formed at a time between probate of the will and the end of 12 months following the expiration of a life estate or life estates."

7. We recognized in *Ferrero Const. Co. v. Dennis Rourke Corp.*, 311 Md. 560, 536 A.2d 1137 (1988), the tendency of courts to be abstemious in

■ We refer to the case of *Fitzpatrick v. Mercantile–Safe Deposit & Trust,* 220 Md. 534, 155 A.2d 702 (1959) (finding no Rule against Perpetuities violation where a donee's reserved power to cancel and revoke the deed of trust, subject to a condition precedent, must have been exercised during her lifetime, and therefore within the period of the Rule), in which we provided Professor John Chipman Gray's recitation of the Rule. Professor Gray stated, "No interest is good unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest." John Chipman Gray, *The Rule Against Perpetuities,* § 201 (4th Ed.1942). In *Safe Deposit & Trust Co. of Baltimore v. Sheehan,* 169 Md. 93, 103, 179 A. 536, 541 (1935), we traced the Rule's conception to the friction between the English landowners who sought to maintain posthumous control of their landholdings and the English courts which desired to protect the common-law tenet of freedom of alienation. One of the reasons for such a judge-made Rule is to promote the productive use of land and prevent its removal from commerce for an indefinite period of time. We stated, "The Rule was established by the courts to preserve the freedom of alienation, and to prevent restrictions on the circulation of property, *i.e.,* that property would not be *extra commercium*[8] for too long a duration of time." *Fitzpatrick,* 220 Md. at 547, 155 A.2d at 709, citing generally *Safe Deposit & Trust Co. v. Sheehan,* 169 Md. 93, 103, 179 A. 536, 541 (1935). In arriving at the Rule's present form and usage we have echoed the statements of courts and commentators:

---

creating exceptions to the Rule against Perpetuities. We noted that there have arisen just three such exceptions in the more than 300 years since the Rule arose in the *Duke of Norfolk's Case,* 3 Ch. Cas. 1, 22 Eng. Rep. 931 (1681). These common-law exceptions provide that the Rule does not apply to the following: (1) a lessee's option to renew a lease, (2) a lessee's option to purchase all or part of the leased premises, and (3) an "usufructuary's" (*i.e.,* "One who has the usufruct or right of enjoying anything in which he has no property." *Black's Law Dictionary* 1544 (6th ed.1990)) option to extend the scope of an easement or profit. *See Ferrero,* 311 Md. at 567–68, 536 A.2d at 1140 (internal citations omitted).

8. *i.e.,* out of the stream of commerce.

"It is a rule of law, not one of construction, and it applies to legal and equitable estates of both realty and personalty. It is not a rule that invalidates interests which last too long, but interests which vest too remotely; in other words, the Rule is not concerned with the duration of estates, but the time of their vesting."

*Fitzpatrick,* 220 Md. at 541, 155 A.2d at 705 (footnotes omitted). Clearly, an agreement's provision that vests an otherwise contingent interest *within* the perpetuities period is what keeps a future interest from the application of the Rule against Perpetuities. *See* Gray, *The Rule Against Perpetuities,* § 323.

The relevant language found in the contract and deed between Mr. Selig and the SHA creates a right of first refusal, enabling Mr. Selig (or his successors) to "preempt" the purchase by another buyer. Mr. Selig's ability to purchase, then, is ongoing but the nature of the right of first refusal is such that he may exercise that right only upon the occurrence of some external conditions.[9]

We previously examined the application of the Rule against Perpetuities to a right of first refusal to purchase an interest in a property in *Ferrero Constr. Co. v. Dennis Rourke Corp.,* 311 Md. 560, 536 A.2d 1137 (1988). *Ferrero* involved a purchaser's (Rourke) contractual right of first refusal with unlimited duration to purchase any of seven remaining lots should the seller (Ferrero) decide to sell any of them. Nearly three years after the creation of the contract between the parties, Ferrero decided to sell an additional lot and Rourke sought to exercise its right of first refusal, but Ferrero rejected Rourke's offer which had matched the terms of a third-party

---

9. Option contracts are contrasted somewhat with rights of first refusal "which are more commonly known as 'preemptive rights,' [which] are interests in property and not merely contract rights." *Ferrero,* 311 Md. at 565, 536 A.2d at 1139 (alterations added) (citing 5A *Powell on Real Property,* ¶ 771[2] (1987)). A preemptioner (the holder of the right of first refusal) may seek specific performance if the property owner attempts to sell the property to someone else. *Ferrero,* 311 Md. at 565, 536 A.2d at 1139.

offer. Rourke sued for specific performance and, ultimately, the Court of Appeals determined that the unlimited duration of Rourke's right of refusal violated the Rule against Perpetuities in creating a preemptive contractual right that acted as a restraint on alienation. *Ferrero*, 311 Md. at 575, 536 A.2d at 1144.

*Ferrero* involved no statute governing the procedure to be applied to the exercise of the right of first refusal—no statute was invoked and none was applied. In *Ferrero* we accepted the national majority view in determining that the Rule against Perpetuities applies to rights of first refusal since such rights constitute an interest in property and "policies favoring certainty and stability strongly support our following the majority of courts." *Id.* at 567, 536 A.2d at 1139–140. We rejected the minority position, stating:

"Even if the minority view were correct that an interest should not be subject to the Rule Against Perpetuities unless that interest constitutes a restraint on alienation, we would disagree that rights of first refusal should not be subject to the Rule. In our opinion, rights of first refusal do restrain the alienability of property. In this respect, however, it is necessary first to distinguish among the various types of rights of first refusal.

"Some rights of first refusal permit the right's owner to purchase property at a fixed price if the property owner, his heirs, or assigns should ever desire to sell. Plainly a right of first refusal at a fixed price inhibits alienability. Often, with the passage of time, the fixed price will bear no relationship to the property's actual market value. Because the owner must often offer the property to the preemptioner at an artificially low price, the owner is deterred from selling the property or from increasing its value by making improvements. Consequently, even the minority view acknowledges that the Rule Against Perpetuities should apply to rights of first refusal at a fixed price.

"A second type of right of first refusal permits the preemptioner to purchase the property at 'market value' if the owner, his heirs or assigns should ever desire to sell.

Some authorities would find the Rule Against Perpetuities inapplicable to such a right. . . .

"The third type of right of first refusal permits the preemptioner to purchase the property at a price equal to any bona fide offer that the owner, his heirs or assigns desire to accept. In this situation, however, many prospective purchasers, recognizing that a matching offer from the preemptioner will defeat their bids, simply will not bid on the property. This in turn will depress the property's value and discourage the owner from attempting to sell. Moreover, even a right of first refusal tied to a bona fide offer may constitute an unreasonable restraint on alienation if the right is of unlimited duration."

*Id.* at 573–74, 536 A.2d at 1142–143 (internal citations omitted).

*Ferrero,* however, differs substantially from the facts of the case *sub judice* in that the former involved no statute governing the right to reacquire property purchased by a state entity. The seller's exercise of its preemptive right in *Ferrero* arose exclusively from the terms of the contract between Rourke and Ferrero, and was not supported by statutory language.

Respondents argue that the failure of the contingencies found within the contract and deed to vest within the recognized Rule period is precisely the fatal flaw in petitioner's argument. They maintain, that in accord with the Rule, vesting of the conditions precedent is the key as to the clause's validity.

In *Dorado Ltd. Partnership v. Broadneck Dev. Corp.,* 317 Md. 148, 562 A.2d 757 (1989), we examined a land sale contract in which, *inter alia,* the conveyance of 112 lots to Dorado (the buyer) was contingent on Broadneck (the seller) receiving sewer allocation for the lots. *Id.* at 150, 562 A.2d at 758. Unable to secure the sewer allocation due to a county moratorium, Broadneck sought declaratory judgment to invalidate the contract for the 112 lots, asserting that the circumstances created an indefinite settlement date and made the contract

unenforceable. *Id.* at 151, 562 A.2d at 758. Broadneck sought relief on the bases that the contract (1) violated the Rule against Perpetuities, (2) imposed an unreasonable restraint on alienation, or (3) was vague and uncertain. *Id.* In discussing the vesting of the interest in *Dorado* we looked to *Chism v. Reese,* 190 Md. 311, 58 A.2d 643 (1948), in which we considered the period of vesting in determining the intent of the testator:

"The term 'vested,' as used in the law of property, signifies that there has been the fixation of a present right to either the immediate or future enjoyment of property. *Curtis v. Maryland Baptist Union Ass'n,* 176 Md. 430, 438, 439, 5 A.2d 836, 121 A.L.R. 1516. The term 'vested' has also another meaning, which is so frequently given to it that it cannot be styled improper. This other meaning is 'transmissible.' As Professor Gray of Harvard has said, 'Such double meaning is, however, very unfortunate, as it has led to much confusion.' *Gray, Rule Against Perpetuities,* 4th Ed., sec. 118. Vesting in that secondary sense is not sufficient to escape the rule against perpetuities. The interest must vest in the sense of becoming a vested remainder. The rule demands that the vesting in interest, not necessarily the vesting in possession or enjoyment, must occur within the prescribed period. . . . The Court, in determining the commencement of a future interest, *considers possible events, and does not look back upon events which have occurred* to see whether the estate has extended beyond the prescribed limit, but looks forward *from the time the limitation was made* to see whether there was then, according to its terms, a possibility that it might so extend. The event, upon the happening of which the remainder is to vest, must be one that is certain to happen within the prescribed period, otherwise the limitation is void."

*Chism,* 190 Md. at 320–321, 58 A.2d at 647 (emphasis added).

We held in *Dorado* that "when the purpose of a contract is to transfer legal title in land, then legal title must [be required by the contract to] vest within the period of the Rule Against Perpetuities," *Dorado,* 317 Md. at 153, 562 A.2d at 760 (altera-

tion added), and we also determined that "where the occurrence of the condition precedent to conveyance is beyond the control of the parties, a reasonable time for performance, less than the perpetuities period, cannot be implied." *Id.* at 158, 562 A.2d at 762.

■ Respondents have argued that because abandonment of the project and determination of no further transportation need was not certain to occur within the Rule period, the clause's language cannot be given effect. Their position, however, fails to take into account the General Assembly's enactment of § 8–309 of the Transportation Article. Because of the statute's exception, the Rule against Perpetuities does not apply under the circumstances of the instant case.

Therefore, the case *sub judice* concerns not *when* or *if* the contingencies will occur, as is the concern with many Rule against Perpetuities cases and several that we have examined, but rather what happens, in light of the statutory exception, when one of the parties to the agreement causes the conditions to occur, whenever in time that may be.

### C. Md.Code (1977, 1977 Supp.), § 8–309 of the Transportation Article

None of the parties dispute that the General Assembly has the power to create statutory exceptions to the common law.[10] "When the legislature has expressly enumerated certain exceptions to a principle, courts normally should be reluctant thereafter to create additional exceptions." *Ferrero*, 311 Md. at 575, 536 A.2d at 1144.

---

**10.** The Maryland Declaration of Rights provides "That the Inhabitants of Maryland are entitled to the Common Law of England ... and to the benefit of such of the English statutes as existed on [July 4, 1776] and have been introduced, used and practiced by the Courts of Law or Equity; and also of all Acts of Assembly in force on [June 1, 1867] ... *subject, nevertheless, to the revision of, and amendment or repeal by, the Legislature of this State.* Md. Const. art. 5(a) (alteration added) (emphasis added). *See also Heath v. State,* 198 Md. 455, 464, 85 A.2d 43, 47 (1951) (noting that "common law rights, unlike constitutional rights, are subject to change by the legislature").

Accordingly, while conceding the General Assembly's power to modify the common-law Rule against Perpetuities, respondents contend that the Legislature has not abrogated the Rule with § 8–309 of the Transportation Article, because this statute governs merely the procedures for disposition of land not needed for a public purpose.

Respondents maintain that the only statutorily enumerated Rule against Perpetuities exceptions are found within the Estates & Trusts Article, exceptions which we have indicated *supra*. That is incorrect. Moreover, while the plaintiff is an estate, this case is not an estate case, it is a real property case.[11]

The version of § 8–309 of the Transportation Article in effect in 1978, the time of the instant contract formation and deed execution, sets out the specific procedure for the SHA's disposition of land, providing the conditions to be fulfilled and the price to be paid.[12] This section's purpose provided, "The *purpose of this section is to return unneeded land to the tax rolls of the counties and to make this land available for use by private enterprise.*" Md.Code (1977, 1977 Supp.), § 8–309(a).[13]

---

11. Even if this were an estate case under the Estates and Trusts Article, provisions contained therein also create an exception or modification of the common-law Rule against Perpetuities. *See The Arundel Corp., supra*.

12. Section 8–309 was first enacted as Md.Code (1957), Art. 89B, §§ 6, 208. The earliest 1977 revision to § 8–309 addressing the price that the original owner must pay to reacquire the property changed the language from its 1957 phrasing, "original or book value" to read "amount equal to the consideration that the Administration or Commission originally paid for the land" in the 1977 version. *See* 1977 Md. Laws, Chap. 13 § 2. A later 1977 revision further inserted the additional condition to be satisfied prior to reconveyance: "and the Secretary determines that the property is no longer needed for any transportation purpose...." *See* 1977 Md. Laws, Chap. 924.

13. A statement accompanying 1977 Md. Laws, Chap. 924, concerning the "Disposal of Property," declares, "FOR the purpose of providing that the Secretary of the Department of Transportation may allow the use, disposal or transferral of certain property from an abandoned highway project for a transportation purpose prior to the disposal of such property...."

The 1983 repeal and reenactment of § 8–309(a), *see* 1983 Md. Laws, Chap. 547, effective July 1, 1983, altered the purpose statement by removing "use by private enterprise" and substituting it with "use by a county or municipality for any transportation purpose." Furthermore, the 1983 revisions granted a county or municipality a priority of acquisition superior to that of the original owner. The county or municipality was entitled to acquire the property for a transportation purpose if the land was from an abandoned project and the Secretary determined that the property was no longer needed for any *state* transportation purpose, and upon both the Secretary's approval and "payment of an amount equal to the consideration that the Administration or Commission originally paid for the land, and reasonable interest and administrative costs." Md.Code (1977, 1983 Supp.), § 8–309(b)(2)(i). Should a county or municipality decline the property, that statute provided that it was then to be available to the original owner or his successor in interest, "on payment of an amount equal to the consideration that the Administration or Commission originally paid for the land." Md.Code (1977, 1983 Supp.), § 8–309(b)(2)(ii).[14]

Further repeal and reenactment, 1988 Md. Laws, Chap. 670, effective July 1, 1988, maintained the 1983 statute's purpose, but effectively rewrote § (b)(2).[15] The change to § (b)(2) again altered the payment to be made by a county or municipality that desired to acquire land that was both from an

---

14. Thus, the 1983 revision, while changing the payment that a municipality or county must make to acquire the property, did not alter the 1977 statute's language concerning the payment required from the original owner in exercising his right to reacquire the property.

15. 1988 Md. Laws, Chap. 489, also rewrote § 8–309(c), governing reacquisition of land from a completed project to enable the person from whom the project's land was acquired to reacquire the property, an alternative not previously provided. If reacquisition occurred within five years of the original conveyance date, the original owner, or successor in interest, was to pay the amount equal to the original consideration; after five years the original owner could reacquire the land at the original market value. Md.Code (1977, 1988 Supp.), § 8–309(c).

abandoned project and no longer needed. According to Md. Code (1977, 1988 Supp.), § 8–309(b)(2)(i):

"If the land is from a project that was abandoned, and the Secretary determines that the property is no longer needed for any State transportation purpose, a county or municipality may acquire the land for a transportation purpose, with the approval of the Secretary, on payment of an amount equal to the lesser of:

1. The appraised value of the land; or

2. The consideration that the Administration or Commission originally paid for the land, plus simple interest at the fair market rate calculated from the time of acquisition to the time of disposition and administrative costs."

The 1988 revision also, for the first time, altered the payment that the original owner must tender in order to reacquire the land:

"If the land is not needed for a county or municipal transportation purpose, the person from whom the land was acquired or the successor in interest of that person has the right to reacquire the land, on payment of an amount equal to the lesser of:

1. The appraised value of the land; or

2. The consideration that the Administration or Commission originally paid for the land, plus simple interest at the fair market value calculated from the time of acquisition to the time of disposition and administrative costs."

Md.Code (1977, 1988 Supp.), § 8–309(b)(2)(ii) of the Transportation Article. Later revisions to § 8–309 (1995 Md. Laws, Chap. 597, and 1997 Md. Laws, Chap. 525) did not make any substantive changes to § (b)(2), governing acquisition by a county, municipality, or previous owner as well as the price that must be paid for the acquisition or reacquisition. Additional revisions found in 2000 Md. Laws, Chap. 209, § 2, and 2001 Md. Laws, Chap. 29, § 1, made no changes to § (b)(2).[16]

---

**16.** As far as this Court can discern, there have been no revisions or alterations to § 8–309 of the Transportation Article since 2001.

The SHA articulated its position as to petitioner's claimed right of first refusal in its brief: "Nothing in the text of any version of § 8–309 or any of the legislative history could be read or interpreted to suggest that the version of § 8–309 in effect on the date that SHA acquired the property controls or has any significance to SHA's disposition of the property." *Even* if petitioner did, at some time, possess a preemptive right to reacquire the property, according to the SHA, that right was contractual and merely resembled a statutory right. The supposed contractual right, the SHA urges, is no longer intact either because its terms violated the common-law Rule against Perpetuities and/or because the statutory provisions on which the contractual right was based have not been preserved. The SHA concludes that "the General Assembly's repeal and reenactment of § 8–309 in 1988 (1988 Md. Laws 670) redefined the former owner's non-vested *statutory* rights, eliminating any possible *statutory* claim by the former owner to purchase any property under § 8–309(b) for the 1978 purchase price of the 4.7135 acres...."

▮ The Court does not agree with the manner in which respondents assess the Legislature's actions. While respondent quotes from our decision in *Beechwood Coal Co. v. Lucas,* 215 Md. 248, 256, 137 A.2d 680, 684 (1958) (quoting *Sutherland on Statutory Construction* §§ 2043, 2044, 2045) that "the special rule of statutory construction that rights which are of purely statutory origin and have no basis at common law are wiped out when the statutory provision creating them is repealed, regardless of the time of their accrual, unless the rights concerned are vested," the contract's and the deed's inclusion of the then-permissible language closely lifted from the statute created a contractual term between the parties, a contractual term that the statute then excepted from the Rule against Perpetuities. The application of the Rule against Perpetuities is determined at the time of the transaction allegedly creating a violation of the Rule, not by what happens, statutorily or otherwise, fifteen years later. If at the time of creation a provision does not violate, or is excepted from, the Rule against Perpetuities, nothing happening there-

after can invalidate the valid provision. The Rule is always considered as of the time a provision is created. Moreover, as we stated in *Lutz v. State*, 167 Md. 12, 172 A. 354 (1934) (quoting 25 R.C.L. 1054):

" 'In order to hold that a statute has abrogated common law rights existing at the date of its enactment, it must clearly appear that they are repugnant to the act, or the part thereof invoked, that their survival would in effect deprive it of its efficacy and render its provisions nugatory.'

"Where, however, a statute and the common law are in conflict, the common law yields to the statute to the extent of the inconsistency."

*Id.* at 15, 172 A. at 356 (alteration added); *see Sutherland on Statutory Construction* § 294.

One of the reasons the Legislature enacted the initial § 8–309 was to encourage the return of land not needed by the State to its original owner and to thereby return it to the stream of commerce. Once a party enters into a contract valid under the statute at the time of execution, subsequent statutes, generally, cannot impair the operation of those contracts. Basic rules of statutory construction also lead us to this conclusion: "It is true, as a general rule, that when the interpretation of a statute is doubtful, in respect to pre-existing contracts, it will be construed as operating prospectively. But when the language of the statute clearly indicates an intention that it shall have a retroactive effect, it must be so applied." *State v. Norwood*, 12 Md. 195, 206 (1858); *see also Baugher v. Nelson*, 9 Gill 299, 303 (1850). We find nothing in the language of the various versions of § 8–309 subsequent to 1978 evincing that the Legislature intended the modification of the statute to impair the rights of SHA's contract with Mr. Selig. Additionally, the changes to the statute were enacted with prospective effective dates.

"[I]n the absence of a clear manifestation of a contrary intent, a statute which adversely affects substantive rights will be assumed to operate prospectively rather than retrospectively." *Beechwood*, 215 Md. at 253–54, 137 A.2d at 682–83.

The *Beechwood* court continued, "On the other hand, where the effect of a new statute is not to impair existing substantive rights but only to alter the procedural machinery involved in the enforcement of those rights, such legislation is usually construed as operating on all proceedings instituted after its passage, whether the right accrued before or after that date." *Id.* at 254, 137 A.2d at 683.

The SHA states that "[t]he parties could have chosen to create a *contractual* right of first refusal to repurchase the property that was certain to vest within a period of 10, 20, 50, 99 [years] or 21 years after the death of a known life in being without violating the Rule Against Perpetuities." (alteration added). The statute under which the parties were operating at the time of their agreement, however, made inclusion of such a limitation unnecessary.[17] Neither party could be certain of the future or of forthcoming Legislative action, and it was the *purchaser*, the SHA, who might control the timing of any prospective disposition of the property. Thus, by inserting the almost *verbatim* statutory language into the contract and into the deed the parties created a contract term that tracked the statutory provisions and that contractually ensured the preservation of a then—statutory right—a statutory exemption to the Rule.

As we have stated, the application of the Rule is determined as of the date of the instrument which raises the issue of applicability. The subsequent passage of statutes that alter the terms of this agreement, even if constitutional, would not make the Rule against Perpetuities applicable, where it was not applicable at the time of the original agreement. In other words, if, constitutional or otherwise within the power of the

---

17. Petitioner observes that the statement of "Unresolved Issues and Recommendations" accompanying 1977 H.B. 104, of 1977 Md. Laws, Chap. 13, § 2, asks in regard to § 8–309(b)(2), "Should the statute specify a time period within which the referenced right-of-first-refusal must be exercised?" The associated recommendation reads, "A change, if any, should be considered by separate legislation." No subsequent change to § 8–309 has inserted a period within which the right must be exercised. We do not mean to say, one way or the other, whether a subsequent statute could impair the contract at issue.

Legislature, a statute is passed that voids such a contract, that contract would be void only by reason of the statute, not void because if the statute had been in place at the time of the making of the original contract, that contract, under that circumstance, would have violated the Rule against Perpetuities.[18]

### D. The State Highway Administration's Use of a Portion of the Conveyance

█ Respondents also have argued that Mrs. Selig is not entitled to exercise the right to reacquire the property because the SHA has used a portion of the property. The SHA maintains that this use has destroyed Mrs. Selig's reacquisition right in several ways: First, the widening of Maryland Route 193 (Greenbelt Road) constitutes a *transportation use*, thus, negating the conclusion that the project was abandoned and rendering impossible the satisfaction of the conditions precedent. Second, the SHA maintains that "the property" as described in the contract and the deed identifies the original 4.7135 acre parcel, not some lesser portion that may be subject to reacquisition.[19] And, third, the statute makes no provision for determining a pro-rata price to be paid for receipt of anything less than the original parcel. Petitioner urges that if "the property" were to signify the entirety of the parcel, it then becomes incumbent upon the SHA to use the entire parcel for the transportation purpose, thus rendering hollow the statute's reconveyance provisions.

█ The Court finds the argument that the entire parcel must still exist unused in order that the right of first refusal

---

18. It is not necessary here to address the constitutional issues relating to the impairment of contracts.

19. The SHA contends that the Legislature's 1988 Md. Laws, Chap. 489, *supra,* which extended to the original owner the right, previously unavailable to an original owner, to reacquire land from a *completed* project embodies the idea of creation of a "remnant" of the original parcel. Because this right was not created until 1988, respondent argues that reacquisition of a lesser amount is not available to Mrs. Selig.

would vest to be less than a powerful argument.[20]   Were that the rule, the State might defeat any possibility of reconveyance of any property acquired for transportation purposes by selling a mere square foot of the property to a third party, or use of a square foot.   Moreover, § 8–309(b) would be rendered a superfluous legislative enactment, hamstringing the SHA from changing projects according to need and having flexibility in carrying out its transportation mandates.   It, or any

---

**20.**   We have noted that a right of first refusal "has no binding effect unless the offeror decides to sell," 25 *Williston on Contracts,* § 67:85. Such preemptive rights are often found in lease provisions allowing the lessee to purchase his demised property if the lessor decides to sell the property.   A commentator has observed, however, "that the holder of a right of first refusal with respect to a portion of a larger tract cannot obtain specific performance where the owners contract to sell the entire larger tract."   *Id.*   This rule was articulated in *Guaclides v. Kruse,* 67 N.J.Super. 348, 357, 170 A.2d 488, 493 (App.Div.1961), which stated:

   "[A] preemptive right to purchase a part only of the whole does not give a preemptive right to purchase the whole.   To rule otherwise would be a judicial remolding of the contract without legal authority.   Nor may the property owner, by an acceptance of an offer to sell the whole, be compelled by judicial decree to dispose of the optioned part separately from the property as a whole.   An attempt to sell the whole may not be taken as a manifestation of an intention or desire on the part of the owner to sell the smaller optioned part so as to give the optionee the right to purchase the same."

*See also Shell Oil Co. v. Trailer & Truck Repair Co., Inc.,* 828 F.2d 205 (3d Cir.1987) (applying New Jersey law to determine that holder of a right of first refusal on a portion of the property could not compel specific performance when owners sold a larger tract); *New Atlantic Garden v. Atlantic Garden Realty Corp.,* 201 App.Div. 404, 414, 194 N.Y.S. 34, 40 (1922), *aff'd,* 237 N.Y. 540, 143 N.E. 734 (Ct.App.1923) (holding that although the "defendant cannot be compelled, unless it so desires, to sell a part of its property ... [the lower court] properly enjoined the defendant from selling said demised property to any one except the plaintiff without according to the plaintiff the first right to purchase the same") (alteration added).   We note that the instant case involves a scenario in which the property to be reconveyed is a *smaller* portion of that involved in the original conveyance due to the SHA's having utilized some of the land.   Although a preemptive right, under the cases cited, to purchase a portion does not automatically give rise to a preemptive right to purchase the whole, it does not necessarily follow that a preemptive right to repurchase the whole parcel is destroyed, when a *portion* of the larger tract has been severed from the whole and when the entire remainder of the tract is offered at auction and the original seller is willing to pay the entire contractually established purchase price.

property owner, subject to a right of first refusal could completely defeat the bargained for right by selling off the remainder, or could divide the parcel into two pieces and sell them individually even to the same purchaser. If that were the law, rights of first refusal would effectively cease to exist. "In determining this legislative intent, a court must read the language of the statute in context and in relation to all of its provisions. In addition, it may consider the statute's legislative history and administrative interpretations, and must consider its purpose." *Department of State Planning v. Hagerstown,* 288 Md. 9, 14, 415 A.2d 296, 299 (1980).

### III. Conclusion

We hold that Md.Code (1977, 1977 Supp.), § 8–309 of the Transportation Article created a statutory exception to the Rule against Perpetuities. In so concluding, we have determined that the contract and the deed's language creating a contractual right of first refusal which echoes the statutory language, is not rendered void by the lack of a specified period within which the conditions precedent, *i.e.*, abandonment of the project for which the property was acquired and the Secretary's determination that the property is no longer needed for any transportation purpose, must occur. Repeal and reenactment of § 8–309 subsequent to the date of the contract's formation and the deed's execution are to apply prospectively.

With our resolution of the above questions, it is unnecessary to reach the discovery issue which, for the purposes of this appeal, has been, to some degree, abandoned by the parties.

**JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY REVERSED; CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY RESPONDENT.**

RAKER, Judge, dissenting:

The majority holds today that Md.Code (1977), § 8–309 of the Transportation Article abrogated the common law Rule

Against Perpetuities with respect to original owners' rights of repurchase in land sold to the State Highway Administration (SHA). That is, the majority concludes that § 8–309 conferred upon SHA and private parties the ability to create, by contract or conveyance, rights of repurchase that might not vest until more than twenty-one years after some life then in being. Because I do not believe that the plain language of § 8–309 creates such an ability, because I do not believe that any such ability arises from the statutory rights created by § 8–309, and because I do not believe the common law should be abrogated by implication, I dissent.

In my view, the 1978 version of § 8–309 would only conflict with the common law Rule if it expressly permitted SHA or private parties to create perpetual contingent interests by contract or conveyance. The plain language of the statute does nothing of the sort. Rather, it charges SHA with the duty to dispose of excess land from completed or abandoned highway projects. In the case of abandoned projects, it dictates that the first right to reacquire the land should be given to the original owner or to that person's successor in interest. The statute does not exclude land which had been purchased before enactment, nor does it provide any guarantee that land purchased subsequent to enactment will be available for repurchase should the statute be later repealed. Thus, any right of repurchase created by § 8–309 is of a very different character than a right of repurchase created by contract or deed. It is a right conferred by the Legislature, based on its findings of public policy [1], and repealable at will.

In my view, if § 8–309 had created a statutory perpetual contingent right of repurchase, then the repurchase agreement in the contract and deed would have been unnecessary. If persons who sold land to the Department of Transportation in 1978 continued to enjoy such a right despite the later modification of § 8–309, then the present action for breach of

---

1. Section 8–309(a) states: "The purpose of this section is to return unneeded land to the tax rolls of the counties and to make this land available for use by private enterprise."

contract, declaration of rights under a contract, and specific performance of a contract would not be necessary. If the statutory right persisted, Mrs. Selig could have brought an action to enforce it, and would be entitled to an injunction to stop the auction, as well as a writ of mandamus ordering the Secretary to convey the property to her. But Mrs. Selig no doubt recognized, when filing her complaint, that she had no statutory basis for relief. The statutory right of repurchase that § 8–309 contained in 1978 no longer existed when its conditions were arguably satisfied in 2003. Rather, Mrs. Selig is entitled to relief only if the 1978 contract or deed effectively created a contingent right for her to repurchase the property. The interest which those documents purported to create, however, violated the common law Rule Against Perpetituties, and there is no language in § 8–309 to suggest that either the State or a private party could validly contract or convey such an interest.

Furthermore, even if § 8–309 conferred contingent interests of potentially infinite duration upon a certain class of individuals, the majority points to no principle of law which would require that any time a government confers some interest upon its citizens by statute, a correlative ability to create that interest by contract or conveyance necessarily arises. Indeed, such a result is contrary to experience. Governments may give citizens the right to inspect public documents, the right to use deadly force, or the right to vote for public officials. All of these rights may be created by statute; all would be patently void as provisions of a contract or deed.

Because the enactment of § 8–309 did not, in my view, abrogate the common law Rule Against Perpetuities by direct conflict or as some species of required corollary, the only remaining possibility is that the statute and the Rule are doctrinally inconsistent at some more abstract level, and that we should therefore find the Rule abrogated by implication. We have often reiterated the "generally accepted rule of law that statutes are not presumed to repeal the common law 'further than is expressly declared, and that a statute, made in the affirmative without any negative expressed or implied,

does not take away the common law.' " *Robinson v. State,* 353 Md. 683, 693, 728 A.2d 698, 702 (1999) (quoting *Lutz v. State,* 167 Md. 12, 15, 172 A. 354, 356 (1934)). While an exception to this canon of interpretation exists "[w]here a statute and the common law are in conflict, or where a statute deals with an entire subject-matter," *Robinson* at 693, 728 A.2d at 702, neither is the case in the statute *sub judice.*